RECORD REVOLUTION NO. 6,
INC., Plaintiff,

v.

CITY OF PARMA, OHIO, et
al., Defendants.

No. C80–38.

United States District Court,
N. D. Ohio, E. D.

April 14, 1980.

David C. Weiner, Eric H. Zagrans, Fred P. Schwartz, Pat E. Morganstern-Claren, Hahn, Loeser, Freedheim, Dean & Wellman, Cleveland, Ohio, Michael L. Pritzker, Pritzker & Glass, Ltd., Chicago, Ill., for plaintiff.

Andrew Boyko, Law Director, Stephen P. Bond, Asst. Law Director, Parma, Ohio, for defendant.

William E. Blackie, Director of Law, Lakewood, Ohio, amici curiae.

### MEMORANDUM OF OPINION

MANOS, District Judge.

On January 10, 1980 the plaintiff, Record Revolution No. 6, Inc., filed this action under 42 U.S.C. § 1983 challenging the constitutionality of City of Parma Ordinance No. 242–79, an ordinance regulating the distribution, advertisement and use of "drug paraphernalia." The plaintiff's verified complaint seeks declaratory as well as injunctive relief. This court's subject-matter jurisdiction is based upon 28 U.S.C. §§ 1331, 1343(3), 2201, and 2202. On January 11, 1980 a hearing was held on the motion for a temporary restraining order filed by the plaintiff with its complaint. At the hearing the defendants agreed not to pursue enforcement of the Ordinance until a decision in this case could be reached on the merits. By agreement of the parties, the court then ordered the preliminary and permanent injunction to be consolidated for hearing. See Rule 65(a)(2), Fed.R.Civ.P. On January 28 and 30, 1980 the hearing on the permanent injunction was held and thereafter, in accordance with the schedule set by the court, the plaintiff submitted its post-trial brief on February 15, 1980 and the defendants submitted theirs on February 25, 1980. On February 29, 1980 the City of Lakewood, Ohio, which enacted an ordinance substantially identical to Parma's No. 242–79 on January 21, 1980, filed an *amicus curiae* brief.[1] On March 3, 1980 the plaintiff filed its reply brief. For the reasons discussed below, the court concludes that Parma Ordinance No. 242–79 is constitutional as it is construed herein.

### I.

Record Revolution No. 6, Inc. is an Ohio corporation which operates a retail business at 7703 West Ridgewood Drive, Parmatown Mall, Parma, Ohio. The plaintiff displays and advertises various items including recorded and taped music as well as "miscellaneous novelty items." (Complaint, ¶ 1). The defendants are: the City of Parma (a municipal corporation organized under the laws of Ohio), John Petruska (the Mayor of Parma), Andrew Boyko (the Director of

---

1. On March 3, 1980 the plaintiff filed a motion to strike the brief submitted by Lakewood. The motion is denied.

Law and Chief Prosecutor of Parma), Francis Szabo (Chief of the Parma Police Department), as well as Kenneth Kuczma, Victor Labutta, Frank Houdek, Joseph Molodec, Evelyn Kopchak, Gerald Boldt, Edward Lonjak, Doris Krawczyk and William Obuch (the members of the Parma City Council).

On January 7, 1980 the Council of the City of Parma, Ohio enacted Ordinance No. 242–79: "An Ordinance Enacting New Sections 620.01(dd) and 620.04 To The Codified Ordinances of The City of Parma, Prohibiting the Sale of Drug Related Paraphernalia." On January 9, 1980 the Ordinance was signed into law by the city's Mayor, defendant Petruska. Ordinance No. 242–79 provides as follows:

"WHEREAS, this Council has become aware of and is concerned over the general proliferation of 'head shops' engaged in the sale of paraphernalia associated with drug use; and

WHEREAS, this Council finds that such establishments serve only to entice young people to abuse substances which are known to be harmful and unsafe for human consumption; and

WHEREAS, this Council finds that this situation has created a problem of such large proportion as to necessitate further legislation on the subject; Now, Therefore, BE IT ORDAINED BY THE COUNCIL OF THE CITY OF PARMA, STATE OF OHIO:

Section 1. That Codified Ordinance 620.-01, as enacted by Ordinance 228–75, passed February 2, 1976, is hereby amended by adding the following language:

620.01 DEFINITIONS.

. . . . .

(dd)(1) 'Drug Paraphernalia' means all equipment, products and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this Chapter. It includes, but is not limited to:

(A) Kits used, intended for use, or designed for use in planting, propagating, cultivating, growing or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived;

(B) Kits used, intended for use, or designed for use in manufacturing, compounding, converting, producing, processing, or preparing controlled substances;

(C) Isomerization devices used, intended for use, or designed for use in increasing the potency of any species of plant which is a controlled substance;

(D) Testing equipment used, intended for use, or designed for use in identifying, or in analyzing the strength, effectiveness or purity of controlled substances;

(E) Scales and balances used, intended for use, or designed for use in weighing or measuring controlled substances;

(F) Diluents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose and lactose, used, intended for use, or designed for use in cutting controlled substances;

(G) Separation gins and sifters used, intended for use, or designed for use in removing twigs and seeds from, or in otherwise cleaning or refining, marihuana;

(H) Blenders, bowls, containers, spoons and mixing devices used, intended for use, or designed for use in compounding controlled substances;

(I) Capsules, balloons, envelopes or other containers used, intended for use, or designed for use in packaging small quantities of controlled substances;

(J) Containers and other objects used, intended for use, or designed for use in storing or concealing controlled substances;

(K) Hypodermic syringes, needles and other objects used, intended for use, or

designed for use in parenterally injecting controlled substances into the human body;

(L) Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marihuana, cocaine, hashish, or hashish oil into the human body, such as:

(i) Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

(ii) Water pipes;

(iii) Carburetion tubes and devices;

(iv) Smoking and carburetion masks;

(v) Roach clips: meaning objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand;

(vi) Miniature cocaine spoons, and cocaine vials;

(vii) Chamber pipes;

(viii) Carburetor pipes;

(ix) Electric pipes;

(x) Air-driven pipes;

(xi) Chillums;

(xii) Bongs;

(xiii) Ice pipes or chillers;

2. In determining whether an object is 'Drug paraphernalia,' a court or other authority should consider, in addition to all other logically relevant factors, the following:

(A) Statements by an owner or by anyone in control of the object concerning its use;

(B) Prior convictions, if any, of an owner, or of anyone in control of the object, under any City, State, or Federal law relating to any controlled substance;

(C) The proximity of the object, in time and space, to a direct violation of this Chapter;

(D) The proximity of the object to controlled substances;

(E) The existence of any residue of controlled substances on the object;

(F) Director circumstantial evidence of the intent of an owner, or of anyone in control of the object to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of this Chapter; the innocence of an owner or of anyone in control of the object, as to a direct violation of this Chapter shall not prevent a finding that the object is intended for use, or designed for use as 'Drug paraphernalia;'

(G) Instructions, oral or written, provided with the object concerning its use;

(H) Descriptive materials accompanying the object which explain or depict its use;

(I) National and local advertising concerning its use;

(J) The manner in which the object is displayed for sale;

(K) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(L) Direct or circumstantial evidence of the ratio of sales of the object(s) to the total sales of the business enterprise;

(M) The existence and scope of legitimate uses for the object in the community;

(N) Expert testimony concerning its use.

Section 2. That there is hereby enacted a new section 620.04 of the Codified Ordinances of the City of Parma which shall read as follows:

620.04 POSSESSION, MANUFACTURE, AND SALE OF DRUG PARAPHERNALIA.

(a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a

controlled substance in violation of this Chapter.

(b) It is unlawful for any person to deliver, sell, possess with intent to deliver or sell, or manufacture with intent to deliver or sell, drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this Chapter.

(c) It is unlawful for any person to place in any newspaper, magazine, handbill, or other publication any advertisement, knowing, or under circumstances where one reasonably should know, that the purpose of the advertisement, in whole or in part, is to promote the sale of objects designed or intended for use as drug paraphernalia.

(d) Any person 18 years of age or over who violates paragraph (b) by delivering drug paraphernalia to a person under 18 years of age who is at least 3 years his junior is guilty of a special offense.

(e) This section does not apply to manufacturers, practitioners, pharmacists, owners of pharmacies and other persons whose conduct was in accordance with Ohio R.C. Chapters 3719, 4715, 4729, 4731 and 4741. This section shall not be construed to prohibit any possession, manufacture, or use of hypodermics made lawful by Section 620.09 of the Codified Ordinances.

(f) Any drug paraphernalia used in violation of this section shall be seized and forfeited to the Municipality.

(g) If any provision of this section or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section which can be given effect without the invalid provision or application, and to this end the provisions of this section are severable.

(h) Whoever violates any of the provisions of paragraphs (a), (b), or (c) is guilty of a misdemeanor of the second degree. If the offender has previously been convicted of a violation of paragraphs (a), (b), or (c), any subsequent violation of the same paragraph is a misdemeanor of the first degree. Whoever violates any of the provisions of paragraph (d) is guilty of a misdemeanor of the first degree."

Section 3. That Section 620.04 of the Codified Ordinances, as enacted by Ordinance 228–75, passed February 2, 1976, be, and hereby it is, repealed.

Section 4. That this Ordinance is hereby declared to be an emergency measure necessary for the immediate preservation of the public health, safety and welfare of the City of Parma, and for the further reason that sale and use of drug paraphernalia is a presently-existing and serious danger to youths which requires immediate regulation, and this Ordinance shall become immediately effective upon receiving the affirmative vote of two-thirds of all members elected to Council and approval of the Mayor, otherwise from and after the earliest period allowed by law."

The parties have stipulated that this Ordinance is based upon the "Model Drug Paraphernalia Act" (hereinafter MDPA) drafted by the Drug Enforcement Administration of the United States Department of Justice.

The MDPA is supplemented by comments which explain its provisions in terms of the drafters' intent. Specifically, the comments indicate that the MDPA was promulgated at the behest of state authorities to enable them to "cope" with the proliferation of drug paraphernalia. Since it was clearly the intent of the Parma City Council to enact the MDPA, the court will use these comments to interpret the language of the Ordinance.

The plaintiff seeks to have the Ordinance declared invalid and unconstitutional. Its contentions are: (1) that the enactment is inconsistent with the Due Process Clause of the Fourteenth Amendment because it is overbroad (it prohibits commercial speech protected by the First Amendment) and

vague; (2) that it is inconsistent with the Equal Protection Clause of the Fourteenth Amendment because it invidiously discriminates against so-called "head shops" and because it is not reasonably related to any legitimate governmental objective; and (3) that it is inconsistent with the Commerce Clause of the Constitution (Article I, Section 8, Clause 3) because it imposes an impermissible burden on interstate commerce.[2] The court will first address the vagueness and overbreadth claims, and then separately evaluate the equal protection and commerce clause arguments.

## II.

## VAGUENESS AND OVERBREADTH

██ In *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), the Supreme Court defined the due process doctrine commonly referred to as "void for vagueness" as follows:

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give

the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of those freedoms." Uncertain meanings inevitably lead citizens to " 'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas are clearly marked."

*Id.* at 108–09, 92 S.Ct. at 2298–99 (citations omitted). Accordingly, to pass constitutional muster an ordinance must provide notice of the conduct which it proscribes in terms which a person of ordinary intelligence can understand, see, e. g., *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976);

**2.** In its complaint the plaintiff also contends that the Ordinance is inconsistent with the Fourth Amendment because it encourages search and seizure with less than probable cause, that it violates the Impairment of Contracts Clause of the Constitution (Article I, Section 10), that it violates the Bill of Attainder Clause of the Constitution (Article I, Section 10), and that it violates the Supremacy Clause of the Constitution (Article VI, Clause 2). None of these arguments were briefed by the parties in their post-trial submissions. However, the court will consider them briefly. The court concludes that each of these contentions is without merit.

The plaintiff's Fourth Amendment contention is unpersuasive. There is nothing in the Ordinance which reduces the constitutional requirement that all arrests, searches and seizures be based upon probable cause. See, e. g., *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The Ordinance does not unconstitutionally impair contracts. As the court's "Interstate Commerce" discussion will indicate, *infra*, the enactment is an appropriate exercise of the protective power of the municipality. Therefore,

"it is no objection that the performance of existing contracts may be frustrated by the prohibition of injurious practices." *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 443–44, 54 S.Ct. 231, 242, 78 L.Ed. 413 (1934).

The Ordinance is not a bill of attainder. As the court's "Vagueness and Overbreadth" discussion indicates, *infra*, this Ordinance applies only to described activities performed with the requisite intent and it leaves to the courts and juries the task of deciding which persons have violated its provisions. See, e. g., *Communist Party v. Subversive Activities Control Board*, 367 U.S. 1, 815 S.Ct. 1357, 6 L.Ed.2d 625 (1961).

Finally, the Ordinance has not been pre-empted by the Federal Food Drug & Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* See *Bambu Sales, Inc. v. Gibson*, 474 F.Supp. 1297 (D.N.J.1979).

Because the court at trial overruled the defendants' motion to dismiss for lack of subject matter jurisdiction, *see Steffel v. Thompson*, 415 U.S. 452, 95 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); that decision will not be reconsidered here.

*United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954); *Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939), and provided clear guidelines for law enforcement officers, judges and juries to follow; see, e. g., *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1971); *Coates v. City of Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214. Moreover, if First Amendment interests are affected, a precise ordinance "evincing a legislative judgment that *certain specific conduct* be . . . proscribed," *Edwards v. South Carolina,* 372 U.S. 229, 236, 83 S.Ct. 680, 684, 9 L.Ed.2d 697 (1963), assures the court that the city council has weighed the ordinance's impact upon First Amendment interests and determined that other governmental policies compel regulation. *Garner v. Louisiana,* 368 U.S. 157, 200, 202, 82 S.Ct. 248, 271–72, 7 L.Ed.2d 207 (1961) (Harlan, J., concurring). See *Grayned v. City of Rockford,* 408 U.S. at 109, n.5, 92 S.Ct. at 2299.

■ The vagueness doctrine does not invalidate every ordinance that could have been drafted more precisely. *The Flipside, Hoffman Estates v. Village of Hoffman Estates,* 485 F.Supp. 400 (N.D.Ill.1980). Reasonableness, not absolute certainty of draftsmanship, is required. *Tobacco Road v. City of Novi,* (E.D.Mich.; Slip Op. No. C79–71000, 6/21/79). Many ordinances are inherently ambiguous, because "[i]n most English words and phrases there lurk uncertainties." *Robinson v. United States,* 324 U.S. 282, 286, 65 S.Ct. 666, 668, 89 L.Ed. 944 (1945). As the Court noted in *Boyce Motor Lines v. United States,* 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952):

> [F]ew words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to

require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.

The test is whether the ordinance presents "ascertainable standards of guilt." *Winters v. New York,* 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948). In *United States v. Petrillo,* 332 U.S. 1, 7, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877 (1947), the Court stated:

> That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is not sufficient reason to hold the language too ambiguous to define a criminal offense. . . . [T]he Constitution does not require impossible standards.

■ The doctrines of vagueness and overbreadth are related: "overbroad laws, like vague ones, deter privileged activity." *Grayned v. City of Rockford,* 408 U.S. at 114, 92 S.Ct. at 2302. However, "[a] clear and precise enactment may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct." *Id.* The plaintiff claims that subsection 620.04(c) of the Ordinance is overbroad because it unduly interferes with commercial speech protected by the First Amendment. As this court noted in *Kucinich v. Forbes,* 432 F.Supp. 1101, 1115 (N.D.Ohio 1977), in order for a statute or ordinance to be unconstitutionally overbroad it must, on its face: (1) restrict speech or other conduct protected by the Constitution of the United States; and (2) the municipalities' interest in restricting the conduct must be insufficient in comparison to the encroachment on the constitutional right involved or, if a legitimate municipal interest exists to justify the restriction, the ordinance must fail to employ the narrowest means consistent with the furtherance of that interest. See *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Kusper v. Pontikes,* 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973). The crucial question, then, is whether the Ordinance sweeps within its prohibitions protected speech which may not be punished.

To determine whether a legislative enactment meets these constitutional requirements the same rules of construction apply whether it is a statute or an ordinance. *The Flipside, Hoffman Estates v. Village of Hoffman Estates, supra* (citing *Martin v. King,* 417 F.2d 458, 461 (10th Cir. 1969)). Among the rules of construction is the rebuttable presumption that legislative enactments are valid unless it is shown that the statute or ordinance in question bears no rational relationship to a legitimate legislative purpose. *United States v. Kiffer,* 477 F.2d 349 (2d Cir. 1973), *cert. denied,* 414 U.S. 831, 94 S.Ct. 62, 38 L.Ed.2d 65. However, a stricter standard of review is required if the enactment infringes upon the exercise of a fundamental right. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). The court must also bear in mind that "[t]he Office of Judges is always to make such construction as to suppress the Mischief and advance the Remedy; and to suppress subtle Inventions and Evasions for Continuance of the Mischief." *United States v. Second National Bank of North Miami,* 502 F.2d 535, 541 (5th Cir. 1974), *cert. denied* 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975) (quoting *Heydon's Case,* 3 Co. 7a, 7b; *Magdalon College Case,* 11 Co. 666, 736b). Moreover, the court should favor an interpretation of the enactment which supports constitutionality. *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). Finally, all laws should receive a sensible construction. *United States v. Ryan,* 284 U.S. 167, 52 S.Ct. 65, 76 L.Ed. 224 (1931). As the Court held in *United States v. Ryan,* supra at 175, 52 S.Ct. at 68:

> A literal application of a statute which would lead to absurd consequences is to be avoided whenever a reasonable application can be given which is consistent with the legislative purpose.

*Id.* at 175, 52 S.Ct. at 68 (citations omitted).

### A. DEFINITION

The key to the Parma Ordinance is the definition of drug paraphernalia contained in section 620.01(dd)(1). Each of the criminal offenses defined in subsections 620.04(a)–(d) refer to "drug paraphernalia," thereby incorporating the definition by reference. The court finds that this definition is not vague.

As the Court of Appeals for the Eighth Circuit observed in *United States v. Johnson,* 541 F.2d 1311, 1315 (8th Cir. 1976), the term " 'paraphernalia' has become a standard vocabulary word in the vernacular of the drug community . . . ." However, drug paraphernalia is difficult to define in constitutionally adequate terms because nearly every item that is used with illegal narcotics also has a more customary and innocent use. The use, manufacture and sale of all such items could not be prohibited constitutionally. *Cf. United States v. Brunnet,* 53 F.2d 219 (W.D.Mo.1931). Rather, such a blanket prohibition would be so imprecise as to lead to selective enforcement which would be unconstitutional. The Parma Ordinance avoids any such wholesale prohibition by defining drug paraphernalia in terms of the intent of the individual or entity charged with one of the offenses described in § 620.04. As the drafters of the MDPA noted, criminal intent is what distinguishes the paper clip which holds the pages of this memorandum of opinion from an identical clip which is used to hold a marijuana cigarette. The drafters of the Model Act commented as follows:

> To insure that innocently possessed objects are not classified as drug paraphernalia, [the definition] makes the knowledge of *criminal intent of the person in control of an object a key element of the definition.* Needless to say, inanimate objects are neither "good" nor "bad," neither "lawful" nor "unlawful." Inanimate objects do not commit crimes. *But, when an object is controlled by people who use it illegally, or who intend to use it illegally, or who design or adapt it for illegal use, the object can be subject to control and the people subjected to prosecution.* [The definition] requires, therefore, that an object be used, intended for use, or designed for use in connection with illicit drugs before it can be controlled as drug paraphernalia.

MDPA, Comment pp. 6–7 (1979) (emphasis added).

As a general rule, a crime consists of two elements: (1) an act or omission, and (2) a state of mind—mens rea. Although the mens rea of an offense may differ from crime to crime, the general state of mind required is an intent to perform the criminal act. Of course, the mens rea and the act must occur simultaneously and the intent must be that of the criminal defendant. Because the definition of drug paraphernalia is referenced in each of the criminal offenses described in this Ordinance, it is an element of each of these offenses. Specifically, the criminal intent used to define drug paraphernalia is an element of the mental state required to convict under this Ordinance. Therefore, the pertinent intent must be that of the individual charged with having committed one of the offenses described in section 620.04(a)–(d). The court concludes that "black-letter" criminal law and the intent of the MDPA draftsmen compel the conclusion that the

definition of drug paraphernalia must be interpreted in terms of the criminal defendant's intent and that this construction is reasonable and sensible.

Citing the testimony of Councilwoman Krawczyk, the plaintiff contends that the intent referenced in the definition is that of the purchaser of the item and that the Ordinance is unconstitutionally vague because a person could, for example, be convicted of dealing in drug paraphernalia if the buyer of his product, or a prospective user several times removed from the transaction, intends to use the item to administer illegal drugs. See *NORML v. Sindak*, Slip Op. 16–17, Civil Action No. TH75–142 (S.D. Ind., 2/4/80). Parma, on the other hand, argues that the Ordinance provides adequate notice of its proscriptions because the relevant intent is that of the seller of the item. The city bases this construction upon cases involving the sale of ingredients used to illegally manufacture liquor[3] which it

---

**3.** Section 18, Title 2, of the National Prohibition Law, 27 U.S.C. § 30 stated:

It shall be unlawful to advertise, manufacture, sell or possess for sale any utensil, contrivance, machine, preparation compound, tablet * * * designed, or intended for use in the unlawful manufacture of intoxicating liquor.

In *United States v. Brunnet, et al.,* 53 F.2d 219 (W.D.Mo.1931) the court assessed the Prohibition Act to determine whose intent was to be considered *when applying it to sellers.* The court held:

While the words "designed" and "intended" by which the third element of the offense is stated are simple words, some ambiguity as to their significance arises from their position in the section. It is unlawful to sell "any * * * preparation, compound * * * substance * * * designed or intended for use in the unlawful manufacture," etc. From this arrangement it might be thought that the words "designed" and "intended" described the preparation, compound, and substance prohibited to be sold and referred to some inherent quality therein. Again, it might be thought that they referred to the design and intention of the purchaser. The third possible interpretation is that they refer to the vendor's design or intention.

My view is that the words "designed" and "intended" must be construed to include a design and intention on the vendor's part that the preparation, compound, and sub-

stance sold by him will be used in the unlawful manufacture of intoxicating liquor. Such a construction is the one most favorable to one accused. It has never been the policy of the law to make an act innocent in itself criminal if the actor had no wrongful purpose or intent. It is scarcely to be thought that Congress proposed to make the mere sale of a preparation, compound, or substance a crime unless the seller had also an intention and design that what was sold by him should be used in the commission of a crime. Certainly Congress did not intend that he should be guilty of an offense because the manufacturer, if he were other than the vendor, designed the preparation, compound, and substance for an ultimate unlawful use, or because the purchaser so intended to employ it.

Such of the decided cases as have construed the words "designed" and "intended," as they are used in section 30, have construed them as referring to the design and intent of the vendor.

*Id.* at 230.

The court in *Brunett* outlined three different ways by which the act could be interpreted depending upon the meaning given the words "intended for use." Those three interpretations of intent are the same as the three of the four categories of drug paraphernalia that the plaintiff derives from section 620.01 of the Ordinance:

(1) All items which are *actually used* by the purchaser or some other possessor for drug-related activities;

argues are analagous to regulation of drug paraphernalia since both the ingredients of liquor and the items used to administer drugs have innocent and lawful uses. The court finds that neither of these suggested constructions can be constitutionally applied to all of the offenses defined in the Ordinance.

■■■ Whether this Ordinance is vague on its face is a question of law which is exclusively the responsibility of the court to determine. *Cf. United States v. Garber*, 589 F.2d 843, 849 (5th Cir. 1979). As the court stated during the hearing, defendant Krawczyk's interpretation of the Ordinance is not binding on it. As the Supreme Court noted in *Bouie v. City of Columbia*, 378 U.S. 347, 355, n. 5, 84 S.Ct. 1697, 1703, 1704 n. 5, 12 L.Ed.2d 894 (1964):

> The determination whether a criminal statute provides fair warning of its prohibitions must be made on the basis of the statute itself and the other pertinent law, rather than on the basis of an *ad hoc*

---

(2) All items which a purchaser *intends to use* in drug-related activities;

(3) All items which are *designed for use* in drug-related activities; and

(4) All items which are listed in Section 620.-01(dd)(1)(L).

Applying the intent of the seller, the *Brunett* court determined that the alternative legal uses of the articles used to produce illegal liquor precluded defining these articles as per se illegal. It further found that a prosecution of a seller under the Act could not be based on the criminal intent of the purchaser, as such a result would violate the clear meaning of the Act. The court finds that reasoning applicable to the Parma Ordinance.

4. The problem of imputing intent to violate the law from the mere offer for sale of certain articles was discussed by the court in *Jones v. United States*, 11 F.2d 98 (4th Cir. 1926). The defendants in that case urged the court to find that the intent of the manufacturer of an article determined the intent for which the article was to be used. In doing so they argued that certain articles be considered illegal based upon the manufacturer's intent, and argued that they could not be held liable for selling those articles, regardless of their intent in making the sale, if the article had not been manufactured with the requisite mens rea. The court held:

> From its language they argue that the article, whatever it is, must be something which was itself made with intent that it should be used in the manufacture of beverage alcohol, and

appraisal of the subjective expectations of particular defendants.

See also *Castaneda-Gonzalez v. Immigration & Naturalization Serv.*, 564 F.2d 417, 424 (D.C.Cir.1977); *Financial Indemnity Co. v. Cargile*, 32 Ohio Misc. 103, 106, 288 N.E.2d 861, 863 (1972) ("We believe that the meaning of the act must be determined from the words of the statute itself. The court cannot consider what an individual legislator, *even the author* of the bill, states he understood them to mean.").

Defining all drug paraphernalia in terms of the state of mind of the seller of the item, does not solve the problem of transferred criminal intent. For example, if a manufacturer is prosecuted under section 620.04(b) and the term "drug paraphernalia" is defined in terms of the seller's intent, as Parma suggests, the manufacturer of an innocent item would be subject to criminal punishment because the seller intends it to be used with illegal drugs.[4] The Ordinance

---

they say that the alcohol which they bought and sold was alcohol which, so far from being designed for use for beverage purposes, had been made unfit for such use by the employment of a formula approved by the government itself. The argument is ingenious, but scarcely convincing.

> In our view, the defendants are no less guilty because the alcohol, before it came into their possession, had not been prepared with the intent that it should be used for the manufacture of an intoxicating beverage. They violated the statute, if they intended, when they conspired to offer it for sale and sold it, that it should be used in the manufacture of beverage alcohol, to be sold as such.

*Id.* at 99.

Other courts have held that the intent of the manufacturer is not to be applied to a seller in determining culpability for the sale of objects. In *Isreal v. United States*, 63 F.2d 345 (3d Cir. 1933) the seller of copper boilers which had been forfeited under the statute argued they should be returned because the boilers had recognized alternative legal uses, and because there was a lack of evidence upon which the court could find the boilers were designed for manufacturing liquor, an unlawful use. Considering the question of seizure of property which has alternative legal and illegal uses the court held:

> The first question is ruled by *Danovitz v. United States*, 281 U.S. 389, 50 S.Ct. 344, 74 L.Ed. 923, affirming *Feitler v. United States*

regulates the following categories of conduct: use of paraphernalia with illegal drugs, possession of paraphernalia with intent to so use, placement of certain drug paraphernalia advertisements, and manufacture of paraphernalia for sole use with drugs. Therefore, defining all drug paraphernalia in terms of the intent of an individual classifiable in any one of these categories would cause a transferred intent problem whenever the definition was applied to the allegedly criminal conduct of individuals in one of the other categories. For this reason, the court's construction, defining drug paraphernalia in terms of the intent of the individual charged with violating the Ordinance, is more reasonable and sensible.

> (C.C.A.) 34 F.(2d) 30, in which it was held that mere possession of property capable of unlawful use, indeed, possession of property "designed" for the manufacture of liquor is not enough to meet the offense defined by section 25, title 2 of the act (27 USCA § 39), but as an inseparable part of the forbidden thing the property should also be "intended" "by the seller" "for use in violating" the Act. *Weinstein v. United States* (C.C.A.) 293 F. 388.

Likewise, the manufacturer of an article was held not culpable under the Prohibition Act when he did not intend the article he manufactured to be used for illegal production of alcohol. The Second Circuit commented on the intent element in *Nosowitz, et al. v. United States*, 282 F. 575 (2d Cir. 1922). The Court held that the mere manufacture and sale of an article which could be used for an illegal purpose would not inculpate the manufacturer/seller of the article unless it was intended by him that the article be put to that illegal use. The court held:

> It has always been the law (unless otherwise prescribed by statute) that to convict one of crime requires the proof of an intention to commit a crime. This statute requires that it be shown that the still is "intended for use in the unlawful manufacture of intoxicating liquors." There is no presumption created by the statute which presumes the possession of a vessel that might be used as a still or part of a still to be unlawful. The act of manufacturing must have coupled with it a specific intent to do the wrong denounced in the statute before the defendants may be said to be guilty. Such intent must be proved as an independent fact, or at least circumstances established from which it would be proper to permit a jury to find such intent. There was no proof that the plaintiffs in error intended

There are three forms of state of mind on which the definition of drug paraphernalia turns: "[A]ll equipment, products and materials of any kind which are (1) *used*, (2) *intended for use*, or (3) *designed for use* in . . . introducing into the human body an [illegal] controlled substance." § 620.-01(dd)(1) (emphasis added). The court construes each of these three elements as implying and requiring the existence of general criminal intent by the defendant. Thus, the criminal defendant's voluntary and intentional use of an item with illegal drugs makes it drug paraphernalia within the meaning of this Ordinance. Similarly, if the defendant intends an item for use with illegal drugs or designs it for that use[5] the item is drug paraphernalia. Adding the

> to manufacture the stills to be used for the unlawful manufacture of liquor.
> *Id.* at 578.

5. Although many if not all of the items described in the Ordinance, as well as those introduced as evidence, have numerous legitimate uses, it is possible that an item which has an innocent use may be proved to have been designed for use with illegal drugs. As District Judge Boyle noted in her analysis of the evidence presented in *Tobacco Road v. City of Novi*, 490 F.Supp. 537 (E.D.Mich.1979):

> Defendant also presented two tobacconists who testified that "paraphernalia" was the trade name for accessories intended to be sold for use with controlled substances. Reviewing the Nalpac catalogues, with which each witness was familiar, both identified many pipes which they described as unsuitable for tobacco use and designed for use with controlled substances. These opinions were based on the size of the bowl, the material of the pipe; and the absence of a stem, among other factors. Each witness testified that small-bowl pipes produce a short smoking period while tobacco smokers customarily seek long-smoking pipes and that non-porous materials, such as metal, glass, and acrylic, were unsuitable for tobacco smoking since they condensed rather than absorbed the moisture generated by lengthy pipe smoking. Each witnesses [sic] further testified that certain items in the catalogue such as razor blades and a "coke" mirror had absolutely no use in the tobacco industry.

> Defendant's evidence, on the other hand, established that there are items clearly identifiable as being primarily adapted or designed for the use of controlled substances. Indeed, it is inferable that such items are

element of general intent not only narrows the scope of the ordinance, it insures that no one will be convicted because of mistake, accident or other innocent reason. For example, if a person smokes marijuana from a pipe believing it contains tobacco, he could not be convicted of using drug paraphernalia under section 620.04(a); the pipe is not drug paraphernalia because it was not intentionally used with marijuana. Similarly, if a person smokes tobacco in a water pipe which was designed for use with marijuana, he is not subject to prosecution for using drug paraphernalia because he did not intend to use the pipe to ingest an illegal controlled substance.

 As a general rule, if words are not defined in an ordinance and there is "no accumulation of jurisprudence on [their] actual meaning," the court must assume that the legislators used them as they are commonly and ordinarily understood. *United States v. Porter*, 591 F.2d 1048, 1053 (5th Cir. 1979). The only phrase defined in the Ordinance is drug paraphernalia. More-

over, there is no accumulation of jurisprudence applicable to this Ordinance because this is a case of first impression. Therefore, the court concludes that the words "equipment, products or materials," and the words describe the uses with illegal drugs to which an item can be put (planting, propagating, cultivating, etc.) should be interpreted according to their ordinary dictionary definitions.

The definition of drug paraphernalia, § 620.01(dd)(1)A–L, also includes a description of items which might be intentionally used, intended for use, or designed for use with an illegal substance. Again, it is important to note that the scope of this Ordinance is narrowed because none of the items listed is drug paraphernalia *per se*; only if one of the three forms of the criminal defendant's intent is present, can an item, for purposes of that defendant's prosecution, be drug paraphernalia within the meaning of this Ordinance.[6]

 Section 620.01(dd)(2) lists fourteen indicia which law enforcement authori-

---

clearly identified both by manufacturers and by retailers for the commercial purpose of marketing the items to be used with controlled substances.

This court does not share the concern that the Indiana District Court expressed in *NORML v. Sendak, supra* at 12, that the phrase "designed for use" is not of sufficient clarity to meet the mandate of due process. An item is designed for use with illegal drugs within the meaning of this Ordinance if the defendant intentionally— that is voluntarily and not because of mistake or other innocent reason—designed or adapted it for use with drugs, regardless of any innocent alternative uses.

**6.** Specifically, the plaintiff suggests that the thirteen items listed in subsection 610.-01(dd)(1)(L) are drug paraphernalia *per se*. This subsection provides:

Drug Paraphernalia . . . includes, but is not limited to:

(L) Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marihuana, cocaine, hashish, or hashish oil into the human body, such as:

(i) Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured meal bowls;

(ii) Water pipes;

(iii) Carburetion tubes and devices;

(iv) Smoking and carburetion masks;

(v) Roach clips: meaning objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand;

(vi) Miniature cocaine spoons, and cocaine vials;

(vii) Chamber pipes;

(viii) Carburetor pipes;

(ix) Electric pipes;

(x) Air-driven pipes;

(xi) Chillums;

(xii) Bongs;

(xiii) Ice pipes or chillers;

The court finds that subsection (L) does not purport to define the listed items as drug paraphernalia *per se*. Because the general definition of drug paraphernalia includes the phrases "used, intended for use, or designed for use," which incorporate the criminal defendant's intent into the definition, and because the phrase "such as" immediately precedes the list, the court finds that the listed items are cited only as examples of items which can be drug paraphernalia if the requisite intent is proved.

The plaintiff's expert, tobacconist Mr. Herman Bessai, testified that pipes of all descriptions and styles can and are used with tobacco, non-hallucinogenic herb mixtures, as well as marijuana. For example, the presence of a screen does not dictate that the pipe is used for smoking marijuana, but rather indicates the smoking preference of a particular smoker. Likewise, pipes with chambers, as well as pipes

ties may use to determine whether an object is "drug paraphernalia." With one exception the court finds that these enforcement guidelines are not vague. The single exception is subpart (K) which provides:

In determining whether an object is "Drug paraphernalia," a court or authority should consider, in addition to all other logically relevant factors, the following:

. . . . .

(K) Whether the owner, or anyone in control of the object, is a *legitimate supplier* of like or related items to the community, such as a licensed distributor or dealer of tobacco products. . . .

Section 620.01(dd)(2)(K) (emphasis added). This portion of the Ordinance fails the second test of vagueness; the reference to "legitimate" suppliers creates a danger of

which cool the smoked substance either with ice, or air, can be used with tobacco, non-hallucinogenic herbs, or marijuana. Testimony, offered in conjunction with the definition of roach clips, § 620.01(dd)(1)(L)(v) indicates that objects as diverse and common as paper clips and alligator clips can be used as roach clips. It is clear, therefore, that the items listed in subpart (L) are generic examples of objects which are commonly used with controlled substances. The mere possession or offer for sale of pipes, alligator clips, miniature spoons, salt cellers, or paper clips does not raise the presumption that the person in possession or selling the object intends that object to be used with controlled substances or that he so used or designed it. Therefore, the items in subparts (A)–(L) are drug paraphernalia within the meaning of the Ordinance if the requisite intent is proved beyond a reasonable doubt.

Among the items listed are "chillums" and "bongs." The court finds that none of these labels is unconstitutionally vague. They are becoming accepted terms to those who use, intend for use, or design paraphernalia, within the meaning of this Ordinance, with illegal drugs.

7. Section 620.04(g), which provides:
If any provision of this section or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section which can be given effect without the invalid provision or application, and to this end the provisions of this section are severable.
The court finds that the sections it holds unconstitutional herein, § 620.01(dd)(2), and the "reasonably should have known" standard of

arbitrary and discriminatory enforcement. See *Grayned v. City of Rockford, supra.* Because the provisions of this Ordinance apply to *all* who use, distribute or advertise even an innocent item with the requisite intent, the term "legitimate" supplier is imprecise and misleading. Accordingly, subpart (K) is severed from the Ordinance pursuant to section 620.04(g), the severability clause.[7] The other subparts of section 620.-01(dd)(2) provide useful guidelines that policemen may use to make a probable cause determination, and that the trier of fact may use, to the extent the applicable rules of evidence permit, to determine whether the elements of an offense have been proved.

### B. OFFENSES

█ The court concludes that the offenses described in section 620.04 are nei-

knowledge in §§ 620.04(b) and (c), *infra*, are severed from the Ordinance by operation of section 620.04(g). The rest of the enactment is constitutionally valid and shall stand.

"A statute bad in part is not necessarily void in its entirety." *Dorchy v. Kansas*, 264 U.S. 286, 290, 44 S.Ct. 323, 324, 68 L.Ed. 686 (1924). When two provisions of a statute are distinct, and one part may stand separate from the other, the unconstitutional portion of the statute may be severed, and the constitutional part allowed to stand. *Champlin Refining Co. v. Corporation Commission*, 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062 (1952); *U. S. v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968).

To determine that the statute shall be allowed to stand, the court must find, that standing alone, legal effect can be given to the parts which are constitutional, and that the legislature intended that statute to be severable. *Dorchy, supra* at 290, 44 S.Ct. at 324. As the Court held in *Champlin Refining Corporation, supra*, "Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Id.* at 234, 52 S.Ct. at 565.

The court finds that the sections of the Parma Ordinance which this court has held to be unconstitutional can be severed from the Ordinance without abrogating any legal effect of the remaining sections. Furthermore, it is clear from section 620.04(g) that this was the intent of the Parma City Council.

ther vague nor overbroad, except for the "reasonably should have known" standards of knowledge which must be severed from subsections (b) and (c).

### 1. *SECTION 620.04(a)*

■ This subsection proscribes the intentional use of drug paraphernalia with illegal drugs as well as the possession of such items with the intent to use them with illegal drugs. To convict an individual of using drug paraphernalia is violation of 620.04(a), the City of Parma must prove each of the following elements beyond a reasonable doubt:

(1) that the defendant used a piece of equipment, a product or material to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body an illegal controlled substance; and

(2) that the defendant acted with the general intent to do the act and not because of mistake, accident or any other innocent reason.

These elements are based upon the definition of drug paraphernalia which is incorporated by reference into subsection (a).[8] As previously described, the pertinent definitional intent in this instance is that of the alleged user.

To convict an individual of the offense of possessing drug paraphernalia with intent to use it with illegal narcotics, the City of Parma must prove each of the following elements beyond a reasonable doubt:

(1) that the defendant possessed a piece of equipment, a product or material; and

(2) that the defendant intended to use[9] the item he possessed to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body an illegal controlled substance.

In accordance with the rules of construction regarding undefined words, the court concludes that the word "possess," as it is used in this Ordinance, means:

The detention and control, or the manual or ideal custody, of anything which may be the subject of property, for one's use and enjoyment, either as owner or as the proprietor of a qualified right in it, and either held personally or by another who exercises it in one's place and name. Act or state of possessing. That condition of facts under which one can exercise his power over a corporeal thing at his pleasure to the exclusion of all other persons.

*Black's Law Dictionary*, p. 1325 (4th ed. 1968). It is clear that this subsection requires more than innocent possession of an object which could be used as drug paraphernalia. For example, although the definition of the word possess is broad enough to include items displayed by a retailer, merely holding an item in inventory is not a violation of subsection (a). Such a retailer would not be subject to prosecution for the possession offense defined in this subsection unless he intended to use the displayed item

---

8. The defendant's intentional use of an item with illegal drugs designates that item as drug paraphernalia and consummates a violation of section 620.04(a). Because the elements of the use offense are the same as a portion of the definition of drug paraphernalia, proof that an item is drug paraphernalia under the intentional use portion of the definition is proof of the offense of using drug paraphernalia with illegal drugs. Thus, only the "used" portion of the definition is, as a practical matter, applicable to this offense. Accordingly, the other two intent elements of the general definition of drug paraphernalia, "intent for use" and "design for use," are not elements of this offense.

9. Again, the elements of this offense are the same as the applicable elements defining drug paraphernalia. Therefore, proof that the item possessed by the defendant is drug paraphernalia (defined as an article "intended for use" with drugs) is proof of the offense of possessing drug paraphernalia with intent to use it with illegal narcotics. Thus, only the "intended for use" portion of the general definition is, as a practical matter, applicable to this offense and the other two intent elements, "used" and "designed for use," are not elements of this offense.

with illegal drugs himself. "Possession with intent to use" requires that the possessor be the individual who intends to use the item with illegal drugs, not some third party. Moreover, innocent possessors of ordinary items that *could* be used with illegal drugs are not subject to prosecution under subsection (a).

The court concludes that this subsection gives persons of average intelligence fair notice of the conduct which is forbidden, *United States v. Harriss, supra,* and that it is drawn narrowly enough to avoid arbitrary arrests. *Grayned v. City of Rockford, supra.*

### 2. *SECTION 620.04(b)*

This subsection applies to individuals who facilitate the use of controlled substances by distributing an item knowing that it will be used with illegal drugs. There are two standards of knowledge used in the Ordinance: (1) actual, and (2) constructive knowledge. The court finds that the "reasonably should have known" standard of constructive knowledge is unconstitutionally vague and that it must be severed from this subsection. The remaining portion of the subsection proscribes, in constitutionally adequate terms, the intentional delivery and sale of drug paraphernalia, as well as its manufacture and possession with intent to deliver or sell, by individuals with knowledge that the item will be used with illegal drugs.

Criminal intent has traditionally been defined to include actual knowledge: one is said to intend a consequence if (a) he desires that his act causes certain consequences, or (b) he actually knows that the consequences are substantially certain to result from his acts. La Fave & Scott, *Criminal Law,* § 28 (1st ed. 1972) (citing Williams, *Criminal Law: The General Part,* §§ 16, 18 (2d ed. 1961)). This subsection reflects the legislative judgment that an individual who acts (distributes drug paraphernalia) intends the result of his act (that the item actually be used with illegal drugs) when he knows that that result is practically certain to follow from his conduct; whether or not the defendant desires that

result is irrelevant. Clearly, the element of actual knowledge adequately protects a criminal defendant's due process rights. For example, to commit the offense of selling paraphernalia under this subsection an individual must act purposely to sell drug paraphernalia and he must act with knowledge that it *will be used* with illegal drugs.

 On the other hand, it is constitutionally impermissible to impute to a criminal defendant knowledge of the illegal use of items which are normally and innocently used every day by a variety of individuals. Construing a drug paraphernalia ordinance that proscribed the sale of items which the seller "had reason to believe" would be used with certain illegal drugs, Judge Sarokin of the District of New Jersey aptly described the problem caused by this standard as follows:

> [T]he seller faced with the Roxbury ordinance has to . . . determine what the customer intends to do with the items of purchase. Certainly in a case where the purchaser announces his or her intention to utilize the paraphernalia purchased for an illegal purpose, the seller would be placed in no dilemma; however, the question arises as to what would create a reasonable belief in the mind of the seller in the absence of such an unlikely announcement by the purchaser. Does the purchaser's age, sex, mannerisms or dress afford to a seller reason to believe that the paraphernalia will be used for an illegal purpose? Or should the nature of the purchaser's companions or the items he or she carries be determinative? These questions indicate the difficulty that a merchant, as well as a law enforcement officer, would have, in the absence of an admission by the purchaser, in determining what gives rise to a reasonable belief that a purchaser intends to utilize the paraphernalia for an illegal purpose. An additional concern is whether it is proper to charge an owner of a department store, or any other store, with responsibility for a sales clerk's determination as to whether the person purchasing an item, especially an innocuous one such

as a weight scale or a spoon, intends to utilize it for some improper and illegal purpose.

*Knoedler v. Roxbury Township*, 485 F.Supp. 990 (D.N.J.1980). Accordingly, the court concludes that the standard of constructive knowledge as applied in this Ordinance is unconstitutionally vague. Defining the offense of knowingly distributing drug paraphernalia in terms of the weakness of an individual's ability to perceive rather than his criminal intent provides insufficient guidance to the distributors covered by this subsection and to those persons charged with the responsibility of enforcing it. The court further finds that the constructive knowledge standard is distinct from the other portions of this subsection and therefore severable from it pursuant to section 620.04(g), the severability clause. See *Champlin Refining Co. v. Corporation Commission, supra.*

It is important to note, that this holding does not restrict the introduction of relevant evidence from which the trier of fact can determine knowledge. The fact of knowledge, just as any other fact in a case, may be proved by any admissible evidence which the court finds relevant. See, e. g., *Reisman v. United States*, 409 F.2d 789 (9th Cir. 1969). If the applicable rules of evidence so provide, state of mind may be shown by circumstantial evidence. *United States v. Jewell*, 532 F.2d 697 (9th Cir.), *cert. denied* 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976); *United States v. Bright*, 517 F.2d 584 (2d Cir. 1975). For example, the indicia of drug paraphernalia listed in section 620.01(dd)(2), as previously construed by the court, may also be relevant evidence of knowledge. Moreover, the element of knowledge may be satisfied by inferences drawn from proof that a defendant deliberately disregarded or consciously ignored knowable facts. *United States v. Callahan*, 588 F.2d 1078 (5th Cir.), *reh. denied* 591 F.2d 1343 (5th Cir. 1979); *United States v. Gentile*, 530 F.2d 461 (10th Cir.), *cert. denied* 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976).

Therefore, to convict an individual charged with delivering, or selling, drug paraphernalia in violation of section 620.04(b) the City of Parma must prove each of the following elements beyond a reasonable doubt:

(1) that the defendant delivered (sold) a piece of equipment, a product or material;

(2) that the defendant delivered (sold) the item (a) intending it for use with illegal narcotics, (b) having designed it himself for use with illegal narcotics, or (c) having intentionally used it himself with illegal narcotics; and

(3) that the defendant delivered (sold) the item with knowledge that it would be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body an illegal controlled substance.

The offenses of possession and manufacture with intent to deliver or sell defined in subsection 620.04(b) include an additional element: the intent to deliver or sell. The court finds that these offenses have the following essential elements:

(1) that the defendant manufactured (possessed) a piece of equipment, a product or material;

(2) that the defendant manufactured (possessed) the item (a) intending that it be used with illegal drugs, (b) having designed it for use with illegal drugs, or (c) having intentionally used it himself with illegal narcotics;

(3) that the defendant intended to deliver or sell this item; and

(4) that the defendant manufactured (possessed) the item with knowledge that it would be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body an illegal controlled substance.

The first element of each offense is the act portion of the crime. The court finds that the terms used to describe the proscribed acts (delivery, sale, manufacturing and possession) are clear. Subsection (b) of the MDPA refers only to the offenses of delivering drug paraphernalia, and possessing or manufacturing it with intent to deliver. The offenses of selling drug paraphernalia, and possessing or manufacturing it with intent to sell which appear in the Ordinance represent a modification of the Model Act. The MDPA comments indicate that its authors intended the term "deliver" to have the same meaning it has in the Uniform Controlled Substances Act: the actual, constructive or attempted transfer from one person to another, whether or not there is an agency relationship. MDPA, Comment, p. 11 (1979). Because the term "sell" is not defined in the Ordinance, the court must assume that the Council intended it to have the commonly understood meaning. *United States v. Porter*, 591 F.2d 1048, 1053 (5th Cir. 1979); *Sheehan v. Scott*, 520 F.2d 825, 829 (7th Cir. 1975). Therefore, the court finds that Parma used the term in its general sense to describe a barter transaction made by any person, whether as principal, proprietor, agent, servant, or employee. In the absence of any relevant testimony or argument, the court finds that the term "deliver" encompasses the sale of drug paraphernalia and that Parma added the term "sale" to express clearly its legislative judgment that such transactions be covered. The overlap of these terms is not a constitutional defect. Each term provides adequate notice of the proscribed conduct and clear enforcement guidelines. The

act of manufacturing refers to the entire process by which an object is readied for sale in open commerce, "including designing, fabricating, assembling, packaging and labeling." MDPA, Comment, p. 11 (citing *Danovitz v. United States*, 281 U.S. 389, 50 S.Ct. 344, 74 L.Ed. 923 (1930)). Possession has already been defined. See p. 13, *supra*.

The second element of each offense expresses the requirement that the item which the defendant delivered, sold, possessed or manufactured be drug paraphernalia. As previously discussed, this element is not unconstitutionally vague.

The court concludes that the means chosen by Parma to regulate the distribution of drug paraphernalia in this subsection are narrow and clear. Two forms of drug paraphernalia distribution are proscribed: actual and intended distribution. The offenses of delivering and selling drug paraphernalia regulate the actual distribution of such items. The offenses of possession and manufacture of drug paraphernalia with intent to deliver or sell regulate its intended distribution. Mere possession or manufacture of items which could constitute drug paraphernalia is not a crime. The final element of each of the offenses, that the actual or intended distribution be done knowingly, further limits the impact of this subsection.

The element of actual knowledge and the definition of drug paraphernalia minimize the impact of this subsection on innocent distribution of items. As a general rule, an act is done knowingly if it is done voluntarily and intentionally.[10] Requiring proof beyond a reasonable doubt that an act was done knowingly insures

---

**10.** "Knowingly" and "willfully" are different concepts of mens rea. In "knowingly" the essential element is one of knowledge; in "willfully" there is the additional requirement of acting with deliberation. *United States v. Mekjian*, 505 F.2d 1320 (5th Cir. 1974). As a general rule an act is done willfully if it is done voluntarily and intentionally, and with the specific intent to do something the law forbids. Devitt & Blackmar, *supra* § 14.06. To establish specific intent the prosecution must prove that the defendant knowingly did an act which the law forbids, purposely intending to violate the law.

"Willfully" speaks of bad purpose to disobey or disregard the law, and generally connotes a higher degree of specific intent than does "knowingly," which is the intentional doing of an act which the law forbids. *United States v. Sirhan*, 504 F.2d 818 (9th Cir. 1974). Accordingly, a statute or ordinance which requires that an offense be done "knowingly" does not generally entitle the defendant to an additional instruction that the offense be done "willfully." *United States v. Sirhan, supra.*

that no one will be convicted for an act done because of mistake, or accident, or other innocent reason. See, e. g., Devitt & Blackmar, *Federal Jury Practice and Instructions* § 14.04 (3d ed. 1977) (citations in annotation). For example, convicting an individual of selling drug paraphernalia under the Ordinance requires proof of distribution of an item by an individual who intends it for use with illegal drugs knowing that it will be so used. Clearly, this is not an innocent transaction. The court is unpersuaded by the plaintiff's argument that the Ordinance is vague because it does not distinguish the innocent sale of ordinary items from their sale as drug paraphernalia. As the Fourth Circuit noted in *Backun v. United States*, 112 F.2d 635 (4th Cir. 1940):

> To say that the sale of goods is a normally lawful transaction is beside the point. The seller may not ignore the purpose for which the purchase is made if he is advised of that purpose, or wash his hands of the aid that he has given the perpetrator of a felony by the plea that he has merely made a sale of merchandise. One who sells a gun to another knowing that he is buying it to commit a murder, would hardly escape conviction as an accessory to the murder by showing that he received full price for the gun; and no difference in principle can be drawn between such a case, and any other case of a seller who knows that the purchaser intends to use the goods which he is purchasing in the commission of a felony. In any such case, not only does the act of the seller assist in the commission of the felony, but his will assents to its commission, since he could refuse to give the assist-

ance by refusing to make the sale. 112 F.2d 635 (4th Cir. 1940).

■ The Ordinance does not define the degree of proof required to establish knowledge that a distributed item will be used with illegal drugs. However, the MDPA comments provide, in pertinent part, as follows:

> The knowledge requirement of Section [620.04] is satisfied when [a defendant]: (i) has actual knowledge an object will be used as drug paraphernalia; [or] (ii) is aware of a high probability an object will be used as drug paraphernalia. . . ."[11]

Therefore, to prove knowledge it is not necessary for the prosecution to prove that the defendant was absolutely certain that the item he sold would be used with narcotics; proof beyond a reasonable doubt of substantial certainty of the result is all that is required. See also Williams, *Criminal Law: The General Part* §§ 16, 18 (2d ed. 1961); Perkins, *A Rationale of Mens Rea*, 52 Harv.L.Rev. 905, 910–11 (1939). As the Fifth Circuit noted in *United States v. Stephens*, 569 F.2d 1372, 1374 (5th Cir. 1978):

> It is not necessary for the prosecution to perform the impossible task of obtaining a print-out of the defendant's state of consciousness at the moment of sale. But, however proved, actual knowledge itself must be shown beyond a reasonable doubt.

Although proof of absolute certainty is not necessary, it is not sufficient to show that the defendant may have suspected or thought that the item would be so used.[12]

---

11. In the Model Penal Code the element of knowledge of a particular fact is also defined as the defendant's awareness of a high probability of its existence. *United States v. Corral-Martinez*, 592 F.2d 263 (5th Cir. 1979); see also *United States v. Morales*, 577 F.2d 769 (2d Cir. 1978).

12. That *knowledge* of the use to which an object *will* be put may be difficult for the government to prove beyond a reasonable doubt, does not render the Ordinance vague. In *Boyce Motor Lines v. United States*, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952) the Supreme Court upheld a statute which made drivers of

vehicles transporting any explosive guilty for knowingly driving on congested thoroughfares, through tunnels, and in dangerous crossings. 18 U.S.C. § 835. The plaintiffs attacked the statute as vague and the Court held:

> The statute punishes only those who knowingly violate the Regulation. This requirement of the presence of culpable intent as a necessary element of the offense does much to destroy any force in the argument that application of the Regulation would be so unfair that it must be held invalid. That is evident from a consideration of the effect of the requirement in this case. To sustain a

### 3. *SECTION 620.04(c)*

█ Subsection 620.04(c) proscribes placing printed advertisements which promote the sale of drug paraphernalia. The court finds that this subsection, as it is construed herein, is neither vague nor overbroad.

As previously noted, subsection (c) incorporates the definition of drug paraphernalia previously construed by the court. Because the offense applies to the conduct of placers of advertisements, it is the advertiser's intent which must be examined to determine whether the item advertised is drug paraphernalia. However, unlike the references in subsections (a) and (b), subsection (c) refers specifically to only two of the three general mens rea elements of the definition of drug paraphernalia; "designed for use" and "intended for use" are referenced but "used" is not. In this manner, the definition of drug paraphernalia in the context of advertising is more narrowly drawn than the general definition set forth in section 620.01(dd)(1). Accordingly, the essential elements of the offense of placing drug paraphernalia advertisements are:

(1) the defendant placed an advertisement in a newspaper, handbill, or other publication;

(2) the purpose of the advertisement, in whole or in part, is to promote the sale of equipment, products, or materials which the defendant designed or intends for use with illegal drugs; and

(3) the defendant knew at the time he placed the advertisement that its purpose was to promote the sale of equipment, products or materials which he designed or intends for use with illegal drugs.

The MDPA comments indicate that the terms "any person" and "place" in the Ordinance refer to "anyone who prints or publishes paraphernalia advertisements, and to anyone who causes these advertisements to be printed or published." [13] For example, if the requisite intent of each can be proved, both the retailer who places the advertisement and the publisher of it are subject to prosecution under the Ordinance. Of course, the impact of this Ordinance is limited by the implicit jurisdictional limitations imposed upon municipalities: "Municipal ordinances are necessarily local in their application. Usually they operate only in the territory of the municipality and can have no force beyond it." McQuillan, 5 *Municipal Corporations*, § 15.30, p. 108 (3d ed.). Specifically, the Ohio Constitution provides that the exercise of Parma's governmental powers cannot extend beyond its geographical limits: "Municipalities shall have the authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary, and other similar regulations, as are not in conflict with general laws." Ohio Constitution, Article 18, Section 3. *City of Cincinnati v. Alexander*, 54 Ohio St.2d 248, 375 N.E.2d 1241 (1978); *Prudential Co-Operative Realty Co. v. City of Youngstown*,

---

conviction, the Government not only must prove that petitioner could have taken another route which was both commercially practicable and appreciably safer (in its avoidance of crowded thoroughfares, etc.) than the one it did follow. It must also be shown that petitioner knew that there was such a practicable, safer route and yet deliberately took the more dangerous route through the tunnel, or that petitioner willfully neglected to exercise its duty under the Regulation to inquire into the availability of such an alternative route.

*Id.* at 342, 72 S.Ct. at 332.

**13.** As the court noted in *Capital Broadcasting Co. v. Mitchell*, 333 F.Supp. 582, 586 (D.D.C. 1971) (citations omitted):

[C]ongress could rationally distinguish radio and television from other media on the basis that the public owns the airwaives and that licenses [sic] must operate broadcast facilities in the public interest under the supervision of a federal regulatory agency.

For this reason, regulation of the electronic media is left to the Federal Communications Commission, *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). Furthermore, Title 15 U.S.C. § 45 empowers the Federal Trade Commission to prevent unfair and deceptive advertising practices. Parma is, therefore, without jurisdiction to regulate the electronic media.

118 Ohio St. 204, 160 N.E. 695 (1928); *State, ex rel. Kahler-Ellis Co.*, 69 Ohio L.Abs. 305, 125 N.E.2d 222 (1954). A further limitation on the scope of this Ordinance is that Parma lacks authority to regulate the jurisdiction of its municipal courts which are established by state law. *Cupps v. City of Toledo*, 170 Ohio St. 144, 163 N.E.2d 384 (1959).

The plaintiff alleges that the ban on advertising imposed by subsection (c) is unconstitutionally overbroad because it prohibits the dissemination of information regarding lawfully sold products in violation of the First Amendment. The court finds that the speech which the Ordinance restricts is not protected by the Constitution because it solicits illegal conduct. Since constitutionally protected speech is not prohibited, the Ordinance is not overbroad.

Subsection (c) proscribes certain commercial speech by making it a crime for any person to place a printed commercial advertisement which he knows is designed to promote the sale of drug paraphernalia. The advertisements affected by this subsection are purely commercial. Neither subsection (c) nor any other provision of the Ordinance proscribes dissemination of factual material of clear public interest. Communication of information, expression of opinions, and recitation of grievances are not regulated. *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Expression which assails controlled substance laws, extolls the attractions of unlawful substances, or glorifies the drug culture is not restricted. *Cf. High Ol' Times v. Busbee*, 456 F.Supp. 1035 (N.D.Ga.1978).

Since the Supreme Court's decision in *Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975), it has been clear that speech does not lose its First Amendment protection because money is spent to project it, as in a paid advertisement of one form or another. *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 761, 96 S.Ct. 1817, 1825, 48 L.Ed.2d 346 (1976). Speech which is conveyed in a form that is sold for profit is also protected even if it involves a solicitation to purchase or otherwise pay or contribute money. *Id.*

However, speech, commercial or otherwise, which solicits illegal activity is not protected by the First Amendment. *Pittsburgh Press Company v. Pittsburgh Commission on Human Relations*, 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973). In *Pittsburgh Press* the Supreme Court sustained an ordinance that had been construed to prohibit newspapers to carry "purely commercial" help-wanted advertisements in sex-designated columns except where the distinction is based upon a bona fide occupational exemption. The Court discussed the illegality of the advertised activity in the following terms:

> Any First Amendment interest which might be served by advertising an ordinary commercial proposal and which might arguably outweigh the governmental interest supporting the regulation is altogether absent when the commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity.

*Id.* at 389, 93 S.Ct. at 2561. In this case the commercial activity is the sale, use, possession and manufacture of drug paraphernalia, which is illegal by operation of subsections 620.04(a) and (b), as construed by this court. Moreover, the court is fully aware of the serious problems caused by rampant drug abuse and that the ready availability of drug paraphernalia is an inducement to illegal drug use. For these reasons, the Parma Ordinance is a reasonable exercise of that municipality's "inherent power" to provide for the health, safety, morals, and welfare of its people. See *Poe v. Ullman*, 367 U.S. 497, 539, 81 S.Ct. 1752, 1775, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting). Therefore, the court concludes that subsection (c) is constitutional; the printed advertisements are unprotected by the First Amendment because their restriction is incidental to a valid limitation on illegal economic activity.

Despite the illegality of the commercial speech regulated, the plaintiff argues that subsection (c) is overbroad because it pro-

scribes advertisement of drug paraphernalia which is available outside of Parma and therefore legal. The plaintiff relies upon *Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975). In *Bigelow* the Court reversed a conviction for violation of a Virginia statute that made the circulation of any publication which encouraged or promoted the processing of an abortion in Virginia a misdemeanor. The defendant had published in his newspaper an advertisement announcing that abortions were legal in New York and offering the services of a referral agency in that state.

 The constitutionality of statutes or ordinances may be determined from the law "as written, or authoritatively construed." See, e. g., *Miller v. California*, 413 U.S. 15, 24–25, 93 S.Ct. 2607, 2614–2615, 37 L.Ed.2d 419 (1973). In light of *Bigelow*, this court construes subsection (c) to proscribe only the placement of advertisements which indicate that drug paraphernalia is available in Parma, Ohio. The subsection is therefore constitutional, as construed herein.

### 4. *SECTIONS 620.04(d), (e), (f), and (h).*

 These four subsections cover (1) the special offense of delivering drug paraphernalia to a minor (§ 620.04(d)), (2) the inapplicability of the Ordinance to dentists, pharmacists, medical doctors and veterinarians acting pursuant to Ohio law (§ 620.-04(e)), (3) the forfeiture of drug paraphernalia (§ 620.04(f)), and (4) the penalties which may be imposed for violating the provisions of this Ordinance. The court finds that each of these provisions is valid.

(1) The special offense described in section 620.04(d) contains the same elements as the offense of knowingly delivering drug paraphernalia (§ 620.04(b)) which the court previously construed to be constitutional, plus the additional element that the deliverer of the item be 18 or over and the recipient be 18 or under. If construed as the court interpreted section 620.04(b), this provision is neither vague nor overbroad.

(2) Although subsection (e) exempts individuals pursuing a profession according to state law, it does not absolve them from liability under the Ordinance if they violate it by acting outside their authorized practices. The court finds that this limitation is rational and that this offense is not vague.

(3) Subsection 620.04(f) authorizes Parma to retain and destroy drug paraphernalia seized during a criminal investigation. This civil forfeiture provision, which entails a proceeding against property independent of any criminal proceedings against individuals, is also constitutionally valid. See *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080 (1974).

(4) Fixing punishment is a legislative function with which the court will not interfere unless the punishment prescribed is manifestly cruel and unusual or grossly disproportionate to the offense. *Kasper v. Brittain*, 245 F.2d 92 (6th Cir. 1957), *cert. denied* 355 U.S. 834, 78 S.Ct. 54, 2 L.Ed.2d 46 (1957); *Kreiling v. Field*, 431 F.2d 502 (9th Cir. 1970). The court finds that the potential punishment provided in subsection 620.04(h) is reasonable and that it is neither so arbitrary nor severe as to constitute cruel and unusual punishment.

### III.

### EQUAL PROTECTION

 The plaintiff argues that the Ordinance violates the Equal Protection Clause of the Fourteenth Amendment because it is directed only at "head shops," and not the many other establishments in Parma which distribute, sell or advertise items which are identical or functionally equivalent to the merchandise sold by it. The court concludes that this argument is meritless for two reasons. First, the basic premise of the argument is false; the Ordinance applies to *all* users, distributors or advertisers of drug paraphernalia who act with the requisite intent, not just "head shops." Second, the Ordinance does not violate the equal protection clause because it is rationally related to a legitimate municipal goal.

 If an ordinance restricts a fundamental interest, such as voting, *Harper v. Virginia Board of Elections*, 383 U.S. 663,

86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), or involves a suspect classification, such as race, *Regents of the University of California v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978), the court must carefully scrutinize it to determine whether the municipality has a compelling interest in the end it seeks to attain and whether the means used are closely congruent to that end. See, e. g., *In re Griffiths*, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973). In this case neither a fundamental right nor a suspect classification is involved. Therefore, traditional equal protection analysis provides the standard of review. As the Supreme Court stated in *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–2517, 49 L.Ed.2d 511 (1976):

> Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude. . . . In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines . . . in the local economic sphere, it is only invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment.

Parma's authority to regulate the use of controlled substances " 'is too firmly established to be successfully called in question.' " *Robinson v. California*, 370 U.S. 660, 664, 82 S.Ct. 1417, 1419, 8 L.Ed.2d 758 (1962). Because the city's regulation of the use, distribution or advertisement of drug paraphernalia is rationally related to this manifestly legitimate municipal interest, *Tobacco Road v. City of Novi, supra*, the plaintiff's equal protection argument is unpersuasive.

## IV.

### THE COMMERCE CLAUSE

■ Finally, the plaintiff claims that the ordinance is inconsistent with the Commerce Clause of the Constitution, Article I, Section 8, Clause 3, because it imposes an impermissible burden on interstate commerce. In *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970), a unanimous Court adopted the following statement of the applicable law:

> Although the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. *Huron Cement Co. v. Detroit*, 362 U.S. 440, 443, 80 S.Ct. 813, 4 L.Ed.2d 852. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities. Occasionally the Court has candidly undertaken a balancing approach in resolving these issues, *Southern Pacific Co. v. Arizona*, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 . . . .

*Pike*, therefore, suggests a three-part test: first, the local legislation must serve a legitimate local public interest; second, it must affect interstate commerce only incidentally; and, third, if the first two tests are met, the court must then determine whether the legitimate local purpose justifies the law's impact on interstate commerce. See *Great Western United Corp. v. Kidwell*, 577 F.2d 1256 (5th Cir. 1978), reversed on other grounds 443 U.S. 173, 99

S.Ct. 2710, 61 L.Ed.2d 464 (1980). Applying this test, the court concludes that the Parma Ordinance does not impermissibly burden commerce.

█ As noted earlier, the object of the Ordinance, the control of drug abuse, is clearly a legitimate municipal concern. Therefore, the first portion of the *Pike* test is met.

The second portion of the test is also met. The court recognizes that because nearly all of the items used with illegal drugs have legitimate uses, the sale of such items could not be prohibited for all purposes. *Knoedler v. Roxbury Township, supra.* However, the Parma Ordinance regulates actual use, intended use, and knowing distribution or advertising of drug paraphernalia. These elements limit the scope of this Ordinance and minimize its impact on interstate commerce. Accordingly, the court concludes that the Ordinance "regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental . . . ." *Pike v. Bruce Church, Inc., supra*, 397 U.S. at 142, 90 S.Ct. at 847.

In *Procter & Gamble Company v. City of Chicago*, 509 F.2d 69 (7th Cir. 1975), *cert. denied*, 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975), the Seventh Circuit described as follows the balancing test which the court must undertake to fulfill the third criteria of the *Pike* standard:

> It is our view, however, that if the burden on interstate commerce is slight, and the area of legislation is one that is properly of local concern, the means chosen to accomplish this end should be deemed reasonably effective unless the party attacking the legislation demonstrates the contrary by clear and convincing proof. If it is determined that this presumption should be applied, no further balancing need be undertaken. The end has already been deemed legitimate and the burden on interstate commerce slight. If the legislation is a reasonable means to that end it is constitutional.

*Id.* at 76 (footnote omitted). In the absence of clear and convincing proof to the contrary, the court concludes that the Ordinance is a reasonable means of protecting the public welfare which does not violate the Commerce Clause.

V.

CONCLUSION

The case law in this area indicates that municipalities across the nation have recognized the problem of proliferating drug paraphernalia, and have sought, with limited success, to enact constitutionally sound legislation to cope with it. This order should not be interpreted to mean that the Parma Ordinance is the wisest or most effective way to cope with the problem. The court's conclusion is that the Ordinance, as it is construed herein, is constitutional.

IT IS SO ORDERED.