**MID-ATLANTIC ACCESSORIES TRADE ASSOCIATION; Simplified Systems; Progressive Plastics; and Joint Possession, Plaintiffs,**

v.

**STATE OF MARYLAND, Defendant.**

**Civ. No. H–80–1343.**

United States District Court,
D. Maryland.

Nov. 11, 1980.

Burt M. Kahn, Fred R. Joseph, Shelly E. Mintz and Baskins & Sears, Hyattsville, Md., for plaintiffs.

Dennis M. Sweeney, Paul F. Strain and Linda H. Lamone, Asst. Attys. Gen., Baltimore, Md., for defendant.

ALEXANDER HARVEY, II, District Judge:

This civil action is another in a long series of constitutional challenges to state and local legislation outlawing the manufacture, distribution and use of drug paraphernalia.[1] Within the past several years, many different communities throughout the United States have become concerned that the unrestricted sale of drug paraphernalia glamorizes and promotes the use and abuse of illegal drugs both by adults and children. To aid in controlling the increasing illegal use of narcotics within their jurisdictions, many states and municipalities have enacted legislation banning the sale of drug paraphernalia. Early legislation of this sort often did not survive constitutional challenge in the courts because of problems of vagueness and overbreadth. *See* Opinion No. 80–035 of the Attorney General of Maryland, 184 *The Daily Record* 6 (April 21, 1980).

More recently, state and local governments have turned to the Model Drug Paraphernalia Act drafted by the Drug Enforcement Administration of the Department of Justice. When that Act recently became law in Maryland, this civil action challenging its constitutionality was filed by a number of affected entities within the State.

The Model Act was introduced in the Maryland Legislature as Senate Bill No. 63 (hereinafter "SB 63" or "the Act"), was enacted as emergency legislation[2] and was signed into law by the Governor on May 27, 1980. SB 63 has been codified as § 287A and § 297, Art. 27, Crimes and Punishment, Ann.Code of Md. (1976 Repl.Vol. and 1979 Supp.). On May 28, 1980, plaintiffs filed this civil action seeking declaratory and injunctive relief.

Plaintiffs are a trade association and three retail distributors which are engaged in the manufacture, distribution or sale of various products which may be considered

---

1. The term "drug paraphernalia", in its broad sense, refers to implements for preparing and using illicit drugs, primarily marijuana and cocaine. *See* statement of Irvin Nathan, Deputy Assistant Attorney General, before the House

Select Committee on Narcotics and Drug Abuse Control, November 1, 1979.

2. Chapter 874, Laws of 1980.

to be drug paraphernalia as defined by the Act.[3] Following a hearing on May 28, 1980, a Temporary Restraining Order was entered by the Court, restraining the State from enforcing the Act. The essential purpose of this Order was to maintain the *status quo* during the time necessary for hearing and deciding plaintiffs' motion for a preliminary injunction. By agreement of counsel, a further Order was entered on June 17, 1980, extending the restraining Order until such time as the Court could rule upon plaintiffs' motion for a preliminary injunction.

Following extensive discovery by the parties, an evidentiary hearing was held on October 2, 3 and 6, 1980.[4] By agreement of the parties, the trial of the action on the merits was consolidated with the hearing of the motion for a preliminary injunction, pursuant to Rule 65(a)(2), F.R.Civ.P.

The parties have submitted extensive briefs and have presented to the Court thorough arguments, numerous exhibits and abundant expert testimony. This opinion constitutes the Court's findings of fact, whether specifically so designated or not. Rule 52, F.R.Civ.P.

## I

### The Statute

SB 63 amends the Maryland Uniform Controlled Substances Act by adding a new Section, § 287A, to Article 27 of the Annotated Code of Maryland. The new Section reads as follows:

§ 287A

(A) As used in this Section, the term "drug paraphernalia" means all equipment, products, and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled dangerous substance in violation of this subheading. It includes but is not limited to:

(1) Kits used, intended for use, or designed for use in planting, propagating, cultivating, growing, or harvesting of any species of plant which is a controlled dangerous substance or from which a controlled dangerous substance can be derived;

(2) Kits used, intended for use, or designed for use in manufacturing, compounding, converting, producing, processing, or preparing controlled dangerous substances;

(3) Isomerization devices used, intended for use, or designed for use in increasing the potency of any species of plant which is a controlled dangerous substance;

(4) Testing equipment used, intended for use, or designed for use in identifying, or in analyzing the strength, effectiveness, or purity of controlled dangerous substances;

(5) Scales and balances used, intended for use, or designed for use in weighing or measuring controlled dangerous substances;

(6) Diluents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose and lactose, used, intended for use, or designed for use in cutting controlled dangerous substances;

(7) Separation gins and sifters used, intended for use, or designed for use in removing twigs and seeds from, or in otherwise cleaning or refining, marijuana;

(8) Blenders, bowls, containers, spoons and mixing devices used, intended for use, or designed for use in compounding controlled dangerous substances;

---

**3.** There were originally eight plaintiffs in the case. With the consent of defendant, an Order was entered on August 25, 1980, dismissing four of the plaintiffs from the case, without prejudice. The four remaining plaintiffs are Mid-Atlantic Accessories Trade Association, Simplified Systems, Progressive Plastics and Joint Possession.

**4.** For the reasons stated orally by the Court on the first day of the hearing, plaintiffs' motion to certify the case as a class action was denied.

(9) Capsules, balloons, envelopes and other containers used, intended for use, or designed for use in packaging small quantities of controlled dangerous substances;

(10) Containers and other objects used, intended for use, or designed for use in storing or concealing controlled dangerous substances;

(11) Hypodermic syringes, needles and other objects used, intended for use, or designed for use in parenterally injecting controlled dangerous substances into the human body;

(12) Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, or hashish oil into the human body, such as:

(I) Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

(II) Water pipes;

(III) Carburetion tubes and devices;

(IV) Smoking and carburetion masks;

(V) Roach clips: meaning objects used to hold burning material, such as a marijuana cigarette, that has become too small or too short to be held in the hand;

(VI) Miniature cocaine spoons, and cocaine vials;

(VII) Chamber pipes;

(VIII) Carburetor pipes;

(IX) Electric pipes;

(X) Air–driven pipes;

(XI) Chillums;

(XII) Bongs;

(XIII) Ice pipes or chillers.

(B) In determining whether an object is drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, the following:

(1) Statements by an owner or by anyone in control of the object concerning its use;

(2) Prior convictions, if any, of an owner or of anyone in control of the object, under any state or federal law relating to any controlled dangerous substance;

(3) The proximity of the object, in time and space, to a direct violation of this Act or to a controlled dangerous substance;

(4) The existence of any residue of controlled dangerous substances on the object;

(5) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of this Act; the innocence of an owner, or of anyone in control of the object, as to a direct violation of this Act shall not prevent a finding that the object is intended for use, or designed for use, as drug paraphernalia;

(6) Instructions, oral or written, provided with the object concerning its use;

(7) Descriptive materials accompanying the object which explain or depict its use;

(8) National and local advertising concerning its use;

(9) The manner in which the object is displayed for sale;

(10) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(11) Direct or circumstantial evidence of the ratio of sales of the object or objects to the total sales of the business enterprise;

(12) The existence and scope of legitimate uses for the object in the community;

(13) Expert testimony concerning its use.

(C) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain or conceal a controlled dangerous substance in violation of this subheading. Any person who violates this Subsection is guilty of a misdemeanor and upon conviction for a first offense may be fined

not more than $500. A person who is convicted of a subsequent violation of this Section may be imprisoned for not more than 2 years or fined not more than $2,000 or both. Any person convicted of violating this Section who previously has been convicted of violating Subsection (D)(2) shall be subject to the same penalties specified for subsequent violations of this Section.

(D)(1) It is unlawful for any person to deliver or sell, possess with intent to deliver or sell, or manufacture with intent to deliver or sell drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled dangerous substance in violation of this Act. Any person who violates this Subsection is guilty of a misdemeanor and upon conviction for a first offense may be fined not more than $500. A person who is convicted of a subsequent violation of this Section may be imprisoned for not more than 2 years or fined not more than $2,000 or both. Any person convicted of violating this Section who previously has been convicted of violating Subsection (D)(2) shall be subject to the same penalties specified for subsequent violations of this Section.

(2) Any person 18 years of age or over who violates Paragraph (1) of this Subsection by delivering drug paraphernalia to a person under 18 years of age who is at least 3 years his junior is guilty of a special offense and upon conviction may be imprisoned for not more than 8 years, fined not more than $15,000, or both.

SB 63 also amends the Maryland statute providing for the forfeiture of property used in the manufacture and distribution of illegal drugs. The Act repealed and re–enacted, with one amendment, § 297(a) of Article 27 of the Annotated Code of Maryland, as follows:

§ 297

(a) The following shall be subject to forfeiture and no property right shall exist in them:

(1) All controlled dangerous substances which have been manufactured, distributed, dispensed, acquired, or possessed in violation of the provisions of this subheading;

(2) All raw materials, products and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled dangerous substance in violation of the provisions of this subheading;

(3) All property which is used, or intended for use, as a container for property described in paragraphs (1) and (2);

(4) All conveyances including aircraft, vehicles or vessels, which are used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in (1) or (2), except that,

(i) No conveyance used by any person as a common carrier or vehicle for hire in the transaction of business as a common carrier or vehicle for hire shall be seized or forfeited under this subheading unless it appears that the owner or other person in charge of the conveyance was a consenting party or privy to a violation of this subheading; and

(ii) No conveyance shall be forfeited under the provisions of this section by reason of any act or omission established by the owner thereof to have been committed or omitted by any person other than such owner while such conveyance was unlawfully in the possession of a person other than the owner in violation of the criminal laws of the United States, or of any state;

(5) All books, records, and research, including formulas, microfilm, tapes, and data which are used, or intended for use, in violation of this subheading;

(6) All money or currency which shall be found in close proximity to contraband

controlled dangerous substances or controlled paraphernalia or which otherwise has been used or intended for use in connection with the illegal manufacture, distribution, dispensing or possession of controlled dangerous substances or controlled paraphernalia.

This money or currency shall be deemed to be contraband of law and all rights, title and interest in and to the money or currency shall immediately vest in and to Baltimore City or the county in which it was seized, the municipal corporation, if seized by municipal authorities, or, if it was seized by State authorities, the State; and no such money or currency shall be returned to any person claiming it, or to any other person, except in the manner hereinafter provided; and

(7) All drug paraphernalia as prohibited by Section 287A of this Article, and controlled paraphernalia as prohibited by Section 287 of this Article.

The new language is Subsection (7), making drug paraphernalia prohibited by § 287 subject to forfeiture.

SB 63 adopted almost verbatim the language of the Model Drug Paraphernalia Act (hereinafter "the Model Act"). The only significant difference is that the Maryland statute omits the Model Act's ban on the advertisement of drug paraphernalia.[5]

## II

### Plaintiffs' Claims

Plaintiffs attack the Act on many grounds, contending that it violates the First, Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments, and the commerce clause of the Federal Constitution. They argue that:

**5.** Article II, Section (D) of the Model Act provides as follows:

"SECTION (D) (Advertisement of Drug Paraphernalia) It is unlawful for any person to place in any newspaper, magazine, handbill, or other publication any advertisement, knowing, or under circumstances where one reasonably should know, that the purpose of the advertisement, in whole or in part, is to promote the sale of objects designed or intended for use as drug

(a) The Act is unconstitutionally vague and overbroad under the due process clause of the Fourteenth Amendment because it does not provide fair warning of the conduct that is prohibited, and does not establish any guidelines to prevent discriminatory enforcement. In particular, the phrases "designed for use," "intended for use" and "reasonably should know" are singled out as unconstitutionally vague.

(b) The Act exceeds the police power of the State and thus offends due process. It is argued that the Act bans items useful and innocent in themselves but will have little effect on drug use, since paraphernalia can be easily improvised. Plaintiffs contend that the Act has no rational basis and is not a reasonable means to a legitimate end.

(c) The forfeiture provisions of the Act authorize the deprivation of property without due process of law because they provide for forfeiture without prior judicial determination. It is further argued that the Act violates the Fourth Amendment by in effect authorizing unreasonable searches.

(d) The Act violates the equal protection clause of the Fourteenth Amendment because it will necessarily result in discriminatory enforcement against "head shops," [6] and because the singling out of "head shops" bears no rational relationship to the legitimate purpose of curbing drug abuse. It is further contended that the Act infringes on fundamental rights without using the least restrictive alternative means of accomplishing a compelling state goal.

(e) The Act unduly and unconstitutionally interferes with the flow of interstate commerce because it proscribes or chills economic activity without serving a legitimate state interest.

paraphernalia. Any person who violates this section is guilty of a crime and upon conviction may be imprisoned for not more than ( ), fined not more than ( ), or both."

**6.** The term "head shop" apparently refers to a retail business that sells items useful in producing and ingesting drugs that affect the user's head. *Delaware Accessories Trade Association v. Gebelein, infra,* 497 F.Supp. at 290.

(f) The Act violates the constitutional right to privacy of the purchasers of banned items, since purchasing and privately possessing these items is a matter of personal taste and interest.

(g) The Act provides for cruel and unusual punishment in that it provides penalties that are irrational and disproportionate in light of penalties imposed for the use and sale of drugs.

(h) The Act violates the First Amendment because it prohibits "commercial speech," i. e., the display and advertising for sale of items innocent in themselves. It is also argued that the First Amendment is violated because the Act subjects protected material to forfeiture and bans symbolic speech related to drug use.

On the record here, this Court finds no merit to any of these contentions. For the reasons set forth herein, judgment will be entered in this case in favor of the defendant.

### III

### Jurisdiction and Abstention

The jurisdiction of the Court is properly invoked, pursuant to 28 U.S.C. §§ 1331, 1334 and 2201. Plaintiffs' claims are asserted both directly under the Federal Constitution and under 42 U.S.C. § 1983.

■ Defendant asks this Court to abstain until Maryland courts have had an opportunity to authoritatively construe SB 63. However, since the Maryland statute is based on the Model Act which has been construed by many courts, abstention is not appropriate in this case. It is not at all likely that the constitutional questions presented in this case will be obviated by state court interpretations on non–constitutional grounds. No compelling reason for abstention has been shown, and this Court will therefore not abstain. See Harris County Comm'rs Court v. Moore, 420 U.S. 77, 83, 95 S.Ct. 870, 874, 43 L.Ed.2d 32

(1975); County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959); High Ol' Times, Inc. v. Busbee, 621 F.2d 135, 140 (5th Cir. 1980); Record Museum v. Lawrence Township, 481 F.Supp. 768 (D.N.J.1979); Record Head Inc. v. Olson, 476 F.Supp. 366 (D.N.D.1979).

### IV

### The Model Act

Model statutes regulating drug abuse are not new. The Uniform Controlled Substances Act,[7] drafted by the National Conference of Commissioners on Uniform State Laws, has been enacted by all but a handful of states. Since that Act did not attempt to control the manufacture, sale or use of drug paraphernalia, the Model Drug Paraphernalia Act was drafted to accomplish that objective.

According to the prefatory note to the Model Drug Paraphernalia Act, the availability of drug paraphernalia in recent years has reached epidemic levels. An entire industry has developed with its own trade magazines and associations designed to promote and glamorize the illegal use of drugs by adults and children alike. In August 1979, when the Model Act was drafted, total sales of drug paraphernalia were estimated to be as high as three billion dollars a year.

Efforts by the states themselves to draft laws controlling drug paraphernalia were not generally successful. These laws were often too vaguely worded and too limited in coverage to withstand constitutional attack or to be effective.

To assist states and local jurisdictions to cope with the proliferation of drug paraphernalia,[8] the Drug Enforcement Administration of the United States Department of Justice undertook to draft a model statute which would pass constitutional muster. The result was the Model Act which was first published in August 1979.

---

7. Maryland adopted the Uniform Controlled Substances Act in 1970. It has been codified as §§ 276-302, Art. 27, Ann.Code of Md. (1976 Repl.Vol.).

8. See Record Revolution No. 6 v. City of Parma, infra, 492 F.Supp. at 1163.

A review of the Model Act convinces this Court that it is carefully drafted legislation [9] designed to assist in controlling a pressing problem of modern–day life. Constitutional attacks against earlier drug paraphernalia laws were clearly in mind when the Model Act was drafted, and attempts were made to meet the defects found by various courts to have existed in earlier legislation of this sort. Whether the drafters of the Model Act were successful in their efforts is the ultimate question in this case.

In the short time since the Model Act was first published in August 1979, many states and localities besides Maryland have adopted it.[10] Challenges to the Act's constitutionality have been numerous. To date, no court has found the Model Act to be unconstitutional.

## V

### Prior Cases

In deciding the issues presented in this case, this Court is hardly writing on a clean slate. Statutes which were based on the Model Act, as well as statutes which were not, have been and are being challenged in federal courts across the country in many recent suits. Three recent decisions have upheld the Model Act in its entirety. *Florida Businessmen for Free Enterprise v. City of Hollywood*, No. 80–6157–Civ–NCR (S.D. Fla. Aug. 29, 1980); *Delaware Accessories Trade Assoc. v. Gebelein*, 497 F.Supp. 289 (D.Del. 1980); and *World Imports, Inc. v. Woodbridge Township*, 493 F.Supp. 428 (D.N.J.1980).[11] Two other decisions have also found the Model Act to be constitutional. *The Casbah, Inc. v. Thone*, No. 80–0271 (D.Neb. Sept. 26, 1980), and *Record Revolution No. 6, Inc. v. City of Parma*, 492 F.Supp. 1157 (N.D.Ohio 1980). In those two

cases, however, the "reasonably should know" language, found in § 287A(D)(1), and the "legitimate supplier" evidentiary factor, found in § 287A(B)(10), were excised. Very recently, the Louisiana statute, which is derived in substantial part from the Model Act, was found to be constitutional. *Tobacco Accessories v. Treen*, 501 F.Supp. 168 (E.D.La.1980). Thus, there are six recent federal District Court decisions which have upheld the constitutionality of the Model Act in its entirety or in substantial part. To date, no Circuit Court decision has been rendered ruling on the constitutionality of the Model Act.

In addition, there are many reported decisions upholding drug paraphernalia statutes which were not based on the Model Act. These include *Flipside, Hoffman Estates, Inc. v. Village of Hoffman Estates*, 485 F.Supp. 400 (N.D.Ill.1980); *Record Head Inc. v. Olson, supra; Florida Businessman for Free Enterprise v. State of Florida*, 499 F.Supp. 346 (N.D.Fla.1980); *Levas v. Village of Antioch*, No. 80–C–1574 (N.D.Ill. Apr. 22, 1980); *Cardarella v. City of Overland Park*, No. 86246 (Johnson County, Kans., Dist.Ct. Dec. 3, 1979), and *Tobacco Road v. City of Novi*, 490 F.Supp. 537 (E.D. Mich.1979). Of these, *Florida Businessmen* and *Record Head* involved statutes very similar to the Model Act, while *Levas* involved a statute that borrowed the Model Act's definition of drug paraphernalia.

Other decisions have held state statutes not based on the Model Act to be unconstitutional in whole or in part. These include *Geiger v. City of Eagan*, 618 F.2d 26 (8th Cir. 1980); *Knoedler v. Roxbury Township*, 485 F.Supp. 990 (D.N.J.1980); *Record Museum v. Lawrence Township*, 481 F.Supp. 768 (D.N.J.1979); *Bambu Sales, Inc. v. Gibson*, 474 F.Supp. 1297 (D.N.J.1979); *Record*

---

9. Judge Debevoise likewise reached this conclusion in *World Imports, Inc. v. Woodbridge Township, infra*, 493 F.Supp. at 433.

10. The Model Act has been enacted by at least ten state legislatures (namely Connecticut, Florida, Illinois, Indiana, Louisiana, Maryland, Nebraska, New Jersey, New York and South Carolina), as well as by municipal governments

in Florida, Ohio, New Jersey and New York. *Delaware Accessories Trade Association v. Gebelein, infra*, 497 F.Supp. at 290–291.

11. In *World Imports, Inc.*, Judge Debevoise abstained from deciding the constitutionality of the thirteen evidentiary factors set forth in the Maryland statute in § 287A(B)(1)–(13).

*Head Corp. v. Sachen*, 498 F.Supp. 88 (E.D. Wis.1980); *Hejira Corp. v. Mac Farlane*, No. 80–F–824 (D.Colo. Sept. 5, 1980); *Florida Businessmen for Free Enterprise v. Pinellas County*, No. 80–482 (M.D.Fla. May 15, 1980); *Smith v. Roark*, No. 80–2110 (S.D. W.Va. May 13, 1980); *Music Stop, Inc. v. City of Ferndale*, 488 F.Supp. 390 (E.D. Mich.1980); and *Indiana Chapter, NORML, Inc. v. Sendak*, No. TH 75–142–C (S.D.Ind. Feb. 4, 1980). Of these cases, *Hejira Corp.* is th edecision dealing with a statute most similar to the Model Act.

A review of these decisions indicates that there are significant differences between the Model Act and other statutes seeking to control the sale and use of drug paraphernalia. The most important difference is that the Model Act is structured so that an essential element of proof in every case is a showing of specific intent. Statutes other than those based on the Model Act lack this requirement in varying degrees, and as the various cited opinions indicate, it is this requirement of specific intent which has saved the Model Act.

In its recent opinion in *Geiger v. City of Eagan, supra*, the Eighth Circuit, in finding a statute not based on the Model Act to be unconstitutionally vague, indicated that its decision might well have been otherwise if the Model Act had been before it. The Court observed that the City "clearly has the power through a properly drawn ordinance to discourage the availability of drugs and the acceptance of drug use by prohibiting the sale of drug related devices. This is not such an ordinance." 618 F.2d at 28. In a footnote, the Court cited the Model Act as an example of a properly drawn statute. 618 F.2d at 28, n.4.

In *Florida Businessmen v. State of Florida, supra*, the Court had before it a statute which departed from the Model Act only by eliminating the specific intent requirement from the section making possession a violation. (*See* § 287A(C) in the Maryland statute.) The possession section was voided, but the rest of the statute was upheld. District Judge Debevoise in New Jersey had before him at different times both a statute not based on the Model Act and one that was. In *Record Museum, supra*, he found a non–Model Act statute to be unconstitutionally vague. A year·later, in *World Imports, supra*, he upheld a Model Act statute.

## VI

### *Vagueness and Overbreadth*

The most important issue presented in this case concerns plaintiffs' contention that the Maryland statute is unconstitutionally vague in violation of plaintiffs' right to due process of law as guaranteed by the Fourteenth Amendment. In *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222 (1972), the Supreme Court said the following:

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to " 'steer far wider of the unlawful zone' * * * than if the boundaries of the forbidden areas were clearly marked."

(Footnotes omitted)

A statute, then, must provide (1) fair notice of what is forbidden, and (2) guidelines for enforcement. *See Grayned v. City of Rockford, supra*.

844

■ This Court finds and concludes that the Maryland statute is not vague inasmuch as it prohibits only acts done with specific intent. The Supreme Court has often indicated that the presence of a specific intent standard saves what otherwise might be a vague statute, *see, e. g., Boyce Motor Lines v. United States*, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952), and that such a standard ought to be read into a statute where possible to preserve its constitutionality, *see, e. g., Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).

SB 63 incorporates a specific intent standard in two ways. First, drug paraphernalia is defined in § 287A(A) as any item "used, intended for use, or designed for use" with illegal drugs. Secondly, the substantive offenses are defined in terms of specific intent. The prohibited acts are (1) using drug paraphernalia, or possessing same with intent to use, to, *inter alia*, inject, ingest, inhale or otherwise introduce illegal drugs into the human body (§ 287A(C)) and (2) selling or manufacturing drug paraphernalia knowing, or under circumstances where one reasonably should know, that the drug paraphernalia will be used, to, *inter alia*, inject, ingest, inhale or otherwise introduce illegal drugs into the human body. (§ 287A(D)). In the absence of the first sort of specific intent, nothing is drug paraphernalia. In the absence of the second, no act committed by a person and involving drug paraphernalia is prohibited.

Plaintiffs do not seriously contest the special relevance of specific intent to the vagueness issue, but rather argue that the Act does not in fact incorporate a specific intent standard. They contend that the definition of drug paraphernalia refers not to the intent of the person charged but to the intent of third persons, either ultimate users or manufacturers. Furthermore, they argue that the phrase "designed for use" refers to objective factors and not to anyone's specific intent at all. Under such an interpretation, plaintiffs assert that items in the hands of a seller would be drug paraphernalia if a remote manufacturer constructed them to be particularly suited for drug use even though the seller did not know or have reason to know that there was anything about the items which made them suited to drug use. Further, plaintiffs contend, any item would be drug paraphernalia in the hands of an innocent seller if a purchaser, however remote, used or intended to use it with illegal drugs.

Such an interpretation amounts to a misreading of the statute. The person who must use an item, design it for use, or intend it for use with drugs in order for it to be drug paraphernalia, is the person charged with one of the Act's substantive violations. This interpretation, which is highly favorable to the accused in a criminal prosecution, is the one given to the same language by all the other courts that have had the Model Act before them. *See Florida Businessmen v. City of Hollywood, supra*, and the other cases cited herein. This is also the interpretation given to similar language in statutes designed to assist in the enforcement of the National Prohibition Act. *See, e. g., United States v. Brunett*, 53 F.2d 219 (W.D.Mo.1931).

This interpretation is also consistent with other provisions of the Act. As Judge Stapleton pointed out in *Delaware Accessories, supra*, 497 F.Supp. at 292, the Section prohibiting the sale of drug paraphernalia (§ 287A(D) in SB 63) is phrased specifically in terms of the use to which the *buyer* puts the item. The Section defining drug paraphernalia is not. Thus, when the drafters of the Act wished to make relevant the use to which a remote purchaser would put the item, they flatly said so. When they did not specifically mention the user's intent or future act, they quite obviously intended that such intent or future act was not relevant.

As Judge Stapleton also noted, the phrase "designed for use" does not necessarily import objective factors into the statute. 497 F.Supp. at 291. "Design" connotes an intentional act as well as an objective set of characteristics. When considered in the context of this statute, it is clear that it is the subjective, intentional sense in which "designed" is used.

The fact that "designed for use" and "intended for use" are used in the disjunctive throughout the Act does not necessarily indicate that each of the two phrases means something entirely different. Rather, it is apparent from a reading of the Act in its entirety that all three verbs (i. e. used, designed and intended) were included in the definition of drug paraphernalia so that the terms would be applicable to all the kinds of conduct barred in the Act's substantive sections. A seller will "intend" an item for use, while a manufacturer is more likely to "design" an item for use, and a user will simply "use" the item.

Plaintiffs next attack the standard of knowledge required on the part of the seller before a sale of drug paraphernalia becomes a prohibited one. The Act bans the sale of drug paraphernalia where the seller knows, or under circumstances where he reasonably should know, that the paraphernalia will be used with illegal drugs. The underlined phrase, plaintiffs argue, brings a vague negligence standard, rather than a specific intent standard, into the Act. See, Thone, supra, and Parma, supra.

This Court would disagree. The "reasonably should know" clause is simply an elaboration of "knowing." A constructive knowledge standard in a criminal statute is not an impermissibly vague one. See Delaware Accessories, supra; World Imports, supra; and Florida Businessmen v. City of Hollywood, supra.

Many federal statutes utilize a "reasonably should know" or similar standard, and the use of such language in a criminal statute has been consistently approved by the courts. See Selzman v. United States, 268 U.S. 466, 45 S.Ct. 574, 69 L.Ed. 1054 (1925); United States v. Featherston, 461 F.2d 1119 (5th Cir.), cert. denied, 409 U.S. 991, 93 S.Ct. 339, 34 L.Ed.2d 258 (1972); United States v. Brunett, supra. Furthermore, in the present case, because a requirement of specific intent is included in the definition of drug paraphernalia, a seller of drug paraphernalia must already have intended that the item be sold for drug use before knowledge of its use by the buyer comes into

play. Under these circumstances, it is not constitutionally improper that the seller be required to open his eyes to the objective realities of the sale.

In Parma, supra, and in Thone, supra (which did little more than adopt the Parma reasoning), the Courts found the "reasonably should have known" standard of constructive knowledge to be unconstitutionally vague and ordered that this portion of the statute be severed. Those rulings will not be followed here. This Court would agree completely with the cogent reasoning of Judge Stapleton in Delaware Accessories, who concluded that the constructive knowledge standard of the Model Act is not unduly vague and is not violative of the due process clause. Judge Debevoise in World Imports, Inc., supra, likewise upheld this portion of the Model Act.

None of plaintiffs' other vagueness arguments have merit. In general, they represent a misunderstanding of or a misreading of the Act. For example, plaintiffs contend that the Sections listing specific items that may be drug paraphernalia (§ 287A(A)(12)(i)–(xiii)) amount to a per se definition of these things as drug paraphernalia, regardless of specific intent. But on the contrary, the specified items are all subject to the specific intent requirement contained in § 287A(A)(12). Similarly, plaintiffs argue that any specific intent standard in the Act is completely vitiated by the language of § 287A(B)(5), which makes evidence of the intent to sell an item knowing it will be used with illegal drugs relevant in determining whether the intent required to make the item drug paraphernalia is present. But that Section goes on to say that innocence as to any direct violation of the Act does not conversely prevent a finding that an item is drug paraphernalia. The challenged language does no more than provide that an item may be drug paraphernalia even where no substantive violation of the Act has occurred. It does not provide that anyone can be found guilty of a violation without specific intent.

As the Grayned case pointed out, a statute such as this one must provide explicit

standards for those who enforce it if arbitrary and discriminatory enforcement is to be avoided. 408 U.S. at 108. The Maryland Act satisfied this requirement by spelling out thirteen factors that may be considered by police and courts in determining whether the requisite intent exists to make an item drug paraphernalia. This Court finds all these factors to be logical and relevant indicators of specific intent in this context. *See, e. g., United States v. Ragland*, 306 F.2d 732 (4th Cir. 1962), *cert. denied*, 371 U.S. 949, 83 S.Ct. 504, 9 L.Ed.2d 498 (1963); *Israel v. United States*, 63 F.2d 345 (3d Cir. 1933); *Millet, Pit and Seed Co. v. United States*, 436 F.Supp. 84 (E.D.Tenn.1977).

Plaintiffs argue that these factors deal with "circumstantial" evidence. But this is certainly no defect. Intent must be proven in almost every criminal case, and by its nature, intent almost always must be proved by means of circumstantial evidence. A conviction based on circumstantial evidence is just as valid as one based on direct evidence, provided, of course, that proof beyond a reasonable doubt has been adduced.

Plaintiffs single out several of the thirteen factors for specific attack. The proximity of an item to a direct violation or to illegal drugs (§ 287A(B)(3)), the percentage of a merchant's sales made up of like items ((B)(11)), and prior drug related convictions of the owner of the item ((B)(2)) are all challenged as vague and questionable criteria for determining the intent of a possible violation of the Act. It is further argued that the advertising factor ((B)(8)) focuses on the intent of third parties, and not on that of the person to be charged. Finally, the expert witness ((B)(13)) and legitimate use ((B)(12)) factors are said to make objective characteristics of the item controlling rather than specific intent.

The simple answer to these contentions is that none of these factors is dispositive. These listed criteria do not define drug paraphernalia but are merely to be con-

sidered by a court or other authority along with other relevant factors in determining whether an object is covered by the statutory definition. They are therefore only guides for determining whether the necessary criminal intent exists. To convict under the statute, a jury must still find beyond a reasonable doubt that a defendant had the requisite criminal intent. That these factors are relevant evidence of intent does not negate the fact that the statute clearly requires proof of specific intent before a violation can be found.

The guideline subject to the sharpest attack is the legitimate supplier factor ((B)(10)). In *Parma* and *Thone*, the Courts concluded that this portion of the legislation was vague and ordered that it be severed because there was a danger of arbitrary and discriminatory enforcement. This Court would disagree with the reasoning of those decisions.[12]

Unquestionably, there are items which are drug paraphernalia but which likewise may have innocent uses. But the innocent uses are not so related that the same array of items could reasonably be expected to be found in the same store unless the intention was that they be used as drug paraphernalia. For instance, an alligator clip, scales and a pipe might logically be sold together in one store catering to the drug trade, but would hardly all be sold together in a store catering to customers who might want to use these items innocently. An alligator clip might be sold innocently in an electronics store, scales in a store serving laboratories or science hobbyists, and a pipe in a tobacco shop. To recognize this obvious fact and to incorporate it into the Act as an evidentiary factor does not create a danger of discriminatory enforcement. A tobacconist or electronics supplier may be guilty of a violation of the Act like anyone else, if it can be proven that the store owner had the requisite intent. Intent can logically be supported by proof of the offering for sale in a store of a combination of items which

12. Both *Delaware Accessories, supra*, and *Florida Businessmen v. City of Hollywood, supra*, found none of the listed factors to be constitutionally objectionable. This Court would agree with those decisions.

makes sense only in the context of the drug trade. *See Israel v. United States, supra,* at 346.

As a part of their case, plaintiffs presented the testimony of one Robert De Grazia, an ex–police chief, who purported, as an expert, to support the proposition that police could not be trained to enforce SB 63 evenhandedly. This Court was not impressed by the reasoning or qualifications of this witness, and no weight at all will be given to his testimony. De Grazia conceded that as a police chief he was successful in training police to enforce fairly Montgomery County's vagrancy ordinance, a task he admitted to be a difficult one. It would be no more difficult to train police officers to enforce this Act.

On the record here, this Court finds and concludes that the Act is not so vague as to present an obstacle to fair enforcement. This Court is satisfied that the Act clearly defines the conduct it prohibits in terms of specific intent. Police and courts deal every day with enforcement problems relating to such intent.

■ Plaintiffs also argue that the statute is overbroad. An "overbroad" statute is one that "does not aim specifically at evils within the allowable area of state control, but on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise" of protected First Amendment rights. *Thornhill v. Alabama,* 310 U.S. 88, 97, 60 S.Ct. 736, 741, 84 L.Ed. 1093 (1940).

■ In this case, the overbreadth argument is closely related to the vagueness argument. Plaintiffs contend that those subject to the Act will not be able to tell what it prohibits and will be afraid to exercise First Amendment rights that may arguably bring them within the sweep of the Act. But as this Court has found, this law is not vague. Reasonable people can readily tell whether their conduct will be violative of the law because it is their own state of mind which is ultimately determinative. When read and interpreted in a reasonable manner, the Act bans no conduct protected by the First Amendment, whether considered to be symbolic speech, commercial speech or ordinary speech.

## VII

### *Due Process*

The concept of due process requires that all legislation be a reasonable means of achieving a legitimate state goal. *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978). Although conceding that the curbing of drug abuse is a legitimate, even compelling, interest of the state, plaintiffs argue that the means chosen, namely banning sales of drug paraphernalia, will have little effect on this objective.

It has been consistently held that there is a rational relationship between banning drug paraphernalia and curbing drug abuse. *See, e. g., Geiger v. City of Eagan, supra* at 28, n. 4; *Parma, supra* at 1179–1180; and *Hejira Corp., supra* at 16–17. Moreover, the Fourth Circuit itself has noted that drug paraphernalia and drug abuse are rationally related. In *Williams v. Spencer,* 622 F.2d 1200, 1205 (4th Cir. 1980), the Fourth Circuit found no merit to the argument that a high school student would not know that an advertisement promoting the sale of drug paraphernalia encourages actions that endanger the health or safety of students.

■ In this case, defendant presented compelling and highly credible expert testimony that the widespread availability of drug paraphernalia contributes to the problem of drug abuse. As Dr. Mitchell S. Rosenthal testified, some items of drug paraphernalia, including many of those in evidence in this case, intensify the effect of drugs used with them, thus making the use of drugs more economical. On this record, this Court finds and concludes that there is clearly a rational relationship between the prohibition of the sale or use of drug paraphernalia and the curbing of drug abuse.

■ Plaintiffs argue that the sponsors of the Model Act and SB 63 themselves harbored some doubts about the efficacy of the

statute. Whatever these doubts may have been, they are not determinative of the issue before the Court. A legislature is not limited to passing laws it is sure will work completely, but may "deal with one part of a problem without addressing all of it." *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 215, 95 S.Ct. 2268, 2275, 45 L.Ed.2d 125 (1975). Moreover, a legislature may experiment. *See Day–Brite Lighting, Inc. v. Missouri,* 342 U.S. 421, 72 S.Ct. 405, 96 L.Ed. 469 (1952).

In their Reply Brief, plaintiffs in effect concede that this statute is reasonably related to a legitimate state purpose. They assert that their industry, rather than glorifying drug abuse, "has already taken the offensive and started a campaign to eliminate all sales of paraphernalia to minors. Members of [the plaintiff MAATA] prominently display signs indicating that sales of smoking accessory items are strictly prohibited to minors." [13] At the very least, this is a recognition by those in the industry that the availability of drug paraphernalia is adverse to the health and welfare of young people.

■ The role of the Court in determining whether particular legislation lacks a rational basis is *not* to judge anew the wisdom of the statute. That has been done by the Legislature, whose task it is. The Legislature is presumed to have acted correctly, and their enactments are presumed to be constitutional. *Exxon Corp. v. Governor of Maryland, supra.* On this record, plaintiffs have not rebutted that presumption.

## VIII

### Fourth Amendment Claims

The Act is challenged on two Fourth Amendment grounds. Plaintiffs argue that the forfeiture provisions of § 297 authorize seizures of property without any prior judicial determination that the property is in violation of the law. They also argue that the Act in effect authorizes unreasonable searches.

■ Rather than enacting entirely new forfeiture provisions, SB 63 merely added prohibited drug paraphernalia to the property listed in § 297 as forfeitable as the result of a violation of Maryland drug laws. The general forfeiture provisions in question here have been upheld by the Court of Appeals of Maryland. *Gatewood v. State,* 268 Md. 349, 301 A.2d 498 (1973). All the procedures that must be followed under pre–existing law as required by due process and the Fourth Amendment must be followed under § 297 to accomplish a forfeiture of drug paraphernalia as provided by the new Subsection (7). Section 297(b) provides that forfeitable property may be seized on judicial process incident to an arrest, or where there is probable cause to believe that the property is dangerous or was used to violate the drug laws. These requirements are adequate protection against arbitrary action.

In their briefs, plaintiffs apparently concede the constitutionality of the forfeiture provisions which have long been a part of Maryland law. However, they argue that the Act's definition of drug paraphernalia is too vague to provide sufficient guidelines for a determination of what is subject to forfeiture. But this Court has already found that the statute is not constitutionally vague nor lacking in standards for enforcement. The specific intent provisions of the definitional Section (§ 287A(A)) and the long list of explicit evidentiary factors (§ 287A(B)) avoid vagueness not only when the Act's substantive provisions are considered, but also when § 297 is examined for any Fourth Amendment violation.

Plaintiffs' other Fourth Amendment argument likewise is lacking in merit. Their basic premise is that mere possession of an item which might arguably be drug paraphernalia is not enough to constitute probable cause for a drug search. From this, plaintiffs reason that by making possession of drug paraphernalia a crime and thereby permitting an arrest for possession of drug paraphernalia and a search incident to that arrest, the Act thereby authorizes a search

---

**13.** Plaintiffs' Reply Brief at 71.

previously deemed unreasonable under the Fourth Amendment.

■ If a state may validly make the possession of drug paraphernalia a crime, then the Fourth Amendment permits a search incident to an arrest for that crime. This Court has found that the State of Maryland may validly prohibit the possession of drug paraphernalia with intent to use it with illegal drugs, as set forth in § 287A. Therefore, a search incident to a valid arrest for that crime is a reasonable one under the Fourth Amendment, whether or not such a search was reasonable before the Act was passed.

## IX

### Equal Protection

The equal protection clause of the Fourteenth Amendment prohibits statutory classifications not reasonably related to a legitimate state purpose. *See, e. g., Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). SB 63 on its face creates no classifications at all. It applies equally to everyone, and it is not apparent from its language that it will have an impact on one group of people different from its impact on another. On its face then, the Act does not violate the equal protection clause.

■ Plaintiffs argue that the Act will "necessarily" be enforced discriminatorily against head shops, and that tobacconists, hardware stores and department stores will be as free as before to sell drug paraphernalia. Plaintiffs contend that the sponsors of this legislation sought primarily to crack down on head shops, and that they have therefore been singled out for discriminatory treatment.

But no such classification has been made by the Act. All retail establishments are subject to it equally. In any event, even if stores dealing primarily in drug paraphernalia were subject to special treatment by the Act, the classification would be rationally related to a legitimate state purpose. Head shops have been recognized as stores which sell drug paraphernalia. *See Wil-*

*liams v. Spencer, supra* at 1203. Insofar as any group of objectively definable items is more likely to be drug paraphernalia under SB 63 than any other, head shops are more likely than others to be sellers of drug paraphernalia because they, by definition, sell those objectively definable items. Accordingly, there is no equal protection violation here.

## X

### Interstate Commerce

■ This Court is further satisfied that the Act will not unduly interfere with the free flow of interstate commerce. As the Supreme Court said in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970), where a statute "regulates evenhandedly to effectuate a legitimate local public interest and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."

■ Certainly this Act does not single out interstate commerce for special treatment but regulates all commerce "evenhandedly." This Court has already determined that the Act serves a legitimate local public interest. Thus, its impact on interstate commerce is "incidental" and not its intended purpose, however extensive it may be in dollar terms, because it is "a chance or minor consequence." (*See* Webster's Third New International Dictionary 1142 (1966)).

Furthermore, this Court finds any burden on interstate commerce to be minimal and certainly not "clearly excessive." The Act prohibits commerce only in items intended to be used with illegal drugs and is no more an interference with interstate commerce than are Maryland statutes prohibiting the sale and use of illegal drugs themselves. Since the Act is not vague or overbroad, it will not "chill" legitimate commerce.

## XI

### Privacy Rights

■ Plaintiffs argue that the Act, by banning the private possession of drug

paraphernalia, interferes with the privacy rights of the possessor, since possession of such things is a matter of personal taste and interest. The Court concludes that plaintiffs have no standing to assert the private possessory rights of third parties. *See Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Hejira Corp., supra* at 11–12.

In the alternative, plaintiffs seek to advance their own privacy interests. However, throughout this case, plaintiffs have characterized themselves as possessors for sale and not possessors for their own private purposes. In oral argument, they conceded that they are here challenging the sale Sections of the Act (§ 287A(D)) and not the possession Section (§ 287A(C)). Plaintiffs' assertion of their own privacy interests therefore appears to be no more than an afterthought. This Court will not undertake to decide a complex constitutional challenge based on a violation of privacy rights in the absence of a plaintiff who clearly has standing to raise it.

## XII

### Cruel and Unusual Punishment

SB 63 does not provide for cruel and unusual punishment. A $500 fine for a first offense is hardly cruel or unusual. Any attempt to decide the propriety of heavier penalties for subsequent offenses must await a concrete case.

Even subsequent violators face only a two–year term of imprisonment and a fine of $2,000. In a recent decision, the Supreme Court upheld a mandatory life sentence for a third felony conviction in a case involving relatively minor property offenses. *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). Applying the principles of that decision here, this Court cannot conclude, in the abstract, that the provisions of the Act which permit a two–year sentence and a $2,000 fine for a subsequent offense would be cruel and unusual.

## XIII

### First Amendment Claims

Finally, plaintiffs argue that SB 63 violates their First Amendment rights by restricting commercial speech and symbolic speech. Concededly, the statute does not in so many words ban commercial speech, and indeed, the Maryland Legislature did not include in SB 63 that section of the Model Act which prohibited the advertising of drug paraphernalia.

Nevertheless, plaintiffs assert that advertising, displays and instructional literature are factors relevant in determining whether an object is drug paraphernalia and that these forms of commercial speech will be inhibited if the Act is put into effect. To the extent that this is so, there is still no First Amendment violation. Speech soliciting illegal conduct is simply not protected by the Constitution. *Pittsburgh Press v. Pittsburgh Comm. on Human Relations*, 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973). Nor does the First Amendment protect speech advocating illegal conduct or instructing how to carry it out where one intends that it be carried out. *United States v. Featherston*, 461 F.2d 1119 (5th Cir.), *cert. denied*, 409 U.S. 991, 93 S.Ct. 339, 34 L.Ed.2d 258 (1972).

Symbolic speech is not affected in any way by SB 63. The Act bans the sale and possession of items intended to be used to produce or ingest illegal drugs. It does not ban those items not so intended nor prohibit symbolic or other speech expressing the views of the possessor of drug paraphernalia or of innocent objects.

## XIV

### Conclusion

For the reasons stated, this Court finds and concludes that SB 63 is valid in its entirety. This carefully drafted statute satisfies all requirements of the United States Constitution and may be enforced by the State of Maryland immediately.

Plaintiffs are therefore not entitled to declaratory or injunctive relief. Judgment on the merits will be entered in favor of the defendant, with costs. Counsel are directed to meet and submit an appropriate Order.